IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 09-00143-01/11-CR-W-ODS |
| | ) | |
| Plaintiff, | ) | **Count One** |
| | ) | 18 U.S.C. § 1962(c) |
| v. | ) | (Racketeering) |
| | ) | Defendants Askarkhodjaev, Yunusov, |
| 1. ABRORKHODJA ASKARKHODJAEV, | ) | Shukurov, Dougherty, Fazilov, Simon, |
| a.k.a. Alex, Abdumajid Maksudov, Abror | ) | Abdoollayev, Cole, Agzamov and Kakhkharov |
| [DOB: 10/24/1978] | ) | NMT 20 Years Imprisonment |
| | ) | NMT $250,000 Fine |
| 2. NODIR YUNUSOV, a.k.a. Nick, | ) | NMT Three Years Supervised Release |
| [DOB: 09/15/1986] | ) | Class C Felony |
| | ) | |
| 3. RUSTAMJON SHUKUROV, | ) | **Count Two** |
| a.k.a Rustam | ) | 18 U.S.C. § 1962(d) |
| [DOB: 10/13/1987] | ) | (Racketeering Conspiracy) |
| | ) | Defendants Askarkhodjaev, Yunusov, |
| 4. KRISTIN DOUGHERTY, | ) | Shukurov, Dougherty, Fazilov, Simon, |
| [DOB: 09/06/1960] | ) | Abdoollayev, Cole, Agzamov and Kakhkharov |
| | ) | NMT 20 Years Imprisonment |
| 5. ILKHAM FAZILOV, | ) | NMT $250,000 Fine |
| [DOB: 09/11/1964] | ) | NMT Three Years Supervised Release |
| | ) | Class C Felony |
| 6. VIOREL SIMON, a.k.a. Victor, | ) | |
| [DOB: 06/10/1981] | ) | **Counts Three thru Sixty-Two** |
| | ) | 18 U.S.C. §§ 1589(a) and 2 |
| 7. NODIRBEK N. ABDOOLLAYEV, | ) | (Forced Labor Trafficking) |
| a.k.a. Bek | ) | Counts Three thru Twenty-Three: Defendants |
| [DOB: 04/08/1982] | ) | Askarkhodjaev, Yunusov, Simon and Cole |
| | ) | Counts Twenty-Four thru Sixty-Two: |
| 8. ANDREW COLE, | ) | Defendants Askarkhodjaev, Yunusov, Fazilov, |
| [DOB: 08/12/1955] | ) | Shukurov, and Simon |
| | ) | NMT 20 Years Imprisonment |
| 9. SANDJAR AGZAMOV, | ) | NMT $250,000 Fine |
| [DOB:10/20/1981] | ) | NMT Three Years Supervised Release |
| | ) | Class C Felony |
| 10. JAKHONGIR KAKHKHAROV, | ) | |
| [DOB: 03/06/1980] | ) | **Counts Sixty-Three thru Eighty-Three** |
| | ) | 18 U.S.C. §§ 1351 and 2 |
| 11. ABDUKAKHAR AZIZKHODJAEV, | ) | (Fraud in Foreign Labor Contracting) |
| [DOB: 09/05/1959] | ) | Defendants Askarkhodjaev, Yunusov, Simon |
| | ) | and Cole |
| Defendants. | ) | NMT 5 Years Imprisonment |
| | ) | NMT $250,000 Fine |
| | ) | NMT 3 Years Supervised Release |
| | ) | Class D Felony |
| | ) | |

) **Counts Eighty-Four and Eighty-Five**
) 18 U.S.C. § 1028A(a)(1)
) (Aggravated Identity Theft)
) Defendant Agzamov
) Mandatory 2 Year Consecutive Imprisonment
) NMT $250,000 Fine
) NMT 1 Year Supervised Release
) Class E Felony
)
) **Count Eighty-Six**
) 18 U.S.C. §§ 1028(a)(7) and 2
) (Identity Theft)
) Defendant Askarkhodjaev
) NMT 20 Years Imprisonment
) NMT $250,000 Fine
) NMT 3 Years Supervised Release
) Class C Felony
)
) **Counts Eighty-Seven, Ninety-One,**
) **One Hundred Ten and One Hundred Fourteen**
) 8 U.S.C. § 1324(a)(1)(A)(iii)(B)(i) and
) 18 U.S.C. § 2
) (Harboring Illegal Aliens)
) Count Eighty-Seven: Defendant Askarkhodjaev
) Count Ninety-One: Defendants Askarkhodjaev
) and Agzamov
) Count One Hundred Ten: Defendants
) Askarkhodjaev and Kakhkarov
) Count One Hundred Fourteen: Defendants
) Askarkhodjaev and Fazilov
) NMT 10 Years Imprisonment
) NMT $250,000 Fine
) NMT 3 Years Supervised Release
) Class C Felony
)
) **Count Eighty-Eight**
) 8 U.S.C. § 1325(c)
) (Marriage Fraud)
) Defendant Askarkhodjaev
) NMT 5 Years Imprisonment
) NMT $250,000 Fine
) NMT 3 Years Supervised Release
) Class D Felony
)
)
)
)
)
)

) **Counts Eighty-Nine, Ninety, One Hundred Six**
) **thru One Hundred Nine, and One Hundred**
) **Eleven thru One Hundred Thirteen**
) 18 U.S.C. §§ 1546(a) and 2
) (Visa Fraud)
) Counts Eighty-Nine, Ninety, One Hundred Six,
) and One Hundred Twelve: Defendant
) Askarkhodjaev
) Count One Hundred Seven and One Hundred
) Thirteen: Defendant Yunusov
) Count One Hundred Eight and One Hundred
) Eleven: Defendant Fazilov
) Count One Hundred Nine: Defendant Shukurov
) NMT 10 Years Imprisonment
) NMT $250,000 Fine
) NMT 3 Years Supervised Release
) Class C Felony
)
) **Counts Ninety-Two thru Ninety-Four**
) 18 U.S.C. § 1957(a)
) (Money Laundering)
) Defendant Askarkhodjaev
) NMT 10 Years Imprisonment
) NMT $250,000 Fine
) NMT 3 Years Supervised Release
) Class C Felony
)
) **Counts Ninety-Five thru Ninety-Seven**
) **and One Hundred Twenty-Two**
) **thru One Hundred Twenty-Six**
) 18 U.S.C. §§ 1341 and 2
) (Mail Fraud)
) Counts Ninety-Five through Ninety-Seven and
) One Hundred Twenty-Two:
) Defendant Askarkhodjaev
) Count One Hundred Twenty-Three: Defendant
) Fazilov
) Count One Hundred Twenty-Four: Defendant
) Shukurov
) Count One Hundred Twenty-Five: Defendant
) Yunusov
) Count One Hundred Twenty-Six: Defendant
) Abdoollayev
) NMT 20 Years Imprisonment
) NMT $250,000 Fine
) NMT 3 Years Supervised Release
) Class C Felony
)

) **Counts Ninety-Eight thru One Hundred One**
) 18 U.S.C. §§ 1956(a)(1)(A)(i) and 2
) (Promotion Money Laundering)
) Count Ninety-Eight: Defendants Askarkhodjaev,
) Dougherty and Agzamov
) Counts Ninety-Nine and One Hundred:
) Defendants Agzamov and Azizkhodjaev
) Count One Hundred One: Defendant Fazilov
) NMT 20 Years Imprisonment
) NMT $500,000 Fine
) NMT 3 Years Supervised Release
) Class C Felony
)
) **Counts One Hundred Two and One Hundred**
) **Twenty-Seven**
) 8 U.S.C. § 1324(a)(1)(A)(ii)(v)(II)(B)(i)
) (Transportation of Illegal Aliens)
) Count One Hundred Two: Defendants Simon,
) Askarkhodjaev, Yunusov, Shukurov and Cole
) Count One Hundred Twenty-Seven: Defendants
) Askarkhodjaev, Simon, Yunosov and Shukurov
) NMT 10 Years Imprisonment
) NMT $250,000 Fine
) NMT 3 Years Supervised Release
) Class C Felony
)
) **Counts One Hundred Three**
) **thru One Hundred Five**
) 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2
) (Concealment Money Laundering)
) Count One Hundred Three: Defendants
) Askarkhodjaev and Agzamov
) Count One Hundred Four: Defendants
) Askarkhodjaev and Kakhkharov
) Count One Hundred Five: Defendants
) Askarkhodjaev and Fazilov
) NMT 20 Years Imprisonment
) NMT $500,000 Fine
) NMT 3 Years Supervised Release
) Class C Felony
)
) **Count One Hundred Fifteen**
) 18 U.S.C. §§ 1951(a) and 2
) (Extortion)
) Defendants Askarkhodjaev, Yunusov and
) Shukurov
) NMT 20 Years Imprisonment
) NMT $250,000 Fine
)

) NMT 3 Years Supervised Release
) Class C Felony
)
) **Count One Hundred Sixteen**
) 18 U.S.C. §§ 1952(a)(2) and 2
) (Interstate Travel in Aid of Racketeering)
) Defendants Askarkhodjaev, Yunusov and Shukurov
) NMT 20 Years Imprisonment
) NMT $250,000 Fine
) NMT 3 Years Supervised Release
) Class C Felony
)
) **Counts One Hundred Seventeen thru**
) **One Hundred Twenty-One**
) 18 U.S.C. § 1343
) (Wire Fraud)
) Counts One Hundred Seventeen and One Hundred
) Twenty-One: Defendant Askarkhodjaev
) Count One Hundred Eighteen: Defendant Yunusov
) Count One Hundred Nineteen: Defendant Shukurov
) Count One Hundred Twenty: Defendant Dougherty
) NMT 20 Years Imprisonment
) NMT $250,000 Fine
) NMT 3 Years Supervised Release
) Class C Felony
)
) **Counts One Hundred Twenty-Eight**
) **thru One Hundred Forty-Three**
) 26 U.S.C. § 7201
) (Evasion of Corporate Employment Tax)
) Defendant Askarkhodjaev
) NMT 5 Years Imprisonment
) NMT $250,000 Fine
) NMT 3 Years Supervised Release
) Class D Felony
)
) $100 Mandatory Special Assessment (Each Count)
)
) **Forfeiture Allegation**
) 8 U.S.C. §§ 1324(b)(1); 18 U.S.C.
) §§ 981(a)(1)(c), 982(a)(1) and (a)(2)(B), 1028(a)(7),
) (b)(5), 1341, 1343, 1589, 1594(d),
) 1956, 1957, 1961(1), 1963; and 28 U.S.C.
) § 2461(c)

| SUPERCEDING INDICTMENT SUMMARY | |
|---|---|
| **DEFENDANT** | **COUNTS** |
| ASKARKHODJAEV | 1 thru 83, 86 thru 98, 102 thru 106, 110, 112, 114 thru 117, 121, 122, and 127 thru 143 |
| YUNUSOV | 1 thru 83, 102, 107, 113, 115, 116, 118, 125, 127 |
| SHUKUROV | 1, 2, 24 thru 62, 102, 109, 115, 116, 119, 124, 127 |
| DOUGHERTY | 1, 2, 98, 120 |
| FAZILOV | 1, 2, 24 thru 62, 101, 105, 108, 111, 114, 123 |
| SIMON | 1 thru 83, 102, 127 |
| ABDOOLLAYEV | 1, 2, 126 |
| COLE | 1 thru 23, 63 thru 83, 102 |
| AGZAMOV | 1, 2, 84, 85, 91, 98 thru 100, 103 |
| KAKHKHAROV | 1, 2, 104, 110 |
| AZIZKHODJAEV | 99, 100 |

## FIRST SUPERCEDING INDICTMENT

THE GRAND JURY CHARGES THAT:

### COUNT ONE
### (Racketeering)

### BACKGROUND

At times material to this superceding indictment:

(1) Defendant Abrorkhodja Askarkhodjaev (hereinafter “Abror”) owned, operated, and controlled a labor leasing company, Giant Labor Solutions, LLC (hereinafter “GLS”) located at 607 Westport Road in Kansas City, Missouri. Through GLS, defendant Abror, personally and in conjunction with employees and associates, secured fraudulent labor leasing contracts regarding clients in the hotel/resort, casino, and construction industries in the states of Alabama, Arizona, California, Colorado, Florida, Kansas, Louisiana, Massachusetts, Missouri, Minnesota, Nevada, New Jersey, South Carolina and Wyoming.

(2) GLS' workforce was predominately comprised of foreign nationals possessing either J-1 work visas, B1/B2 visitor visas, F-1 student visas, or H-2B work visas. Consequently, the Criminal Enterprise employed these alien workers and arranged for them to enter the United States illegally and overstay their visas. Additionally, the Criminal Enterprise did not have legal authorization to assign the alien workers to many of the specific locations within the United States during their term of employment. Moreover, defendant Abror, caused fraudulent petitions to be mailed and filed extending or changing the visa status of those foreign nationals.

(3) Defendant Abror associated with and controlled the operations of the following businesses as part of the Criminal Enterprise:

- ABB Maintenance, LLC at 7575 W. 106th Street, Apt. 36, Overland Park, KS 66212, which, in conjunction with unindicted subject B.Y., acted as a subcontractor for Pro-Line Management controlled by defendant Dougherty, for the purpose of fulfilling labor leasing contracts in Kansas City, Missouri, and elsewhere between January 2001 and February 2005.
- Anchor Building Services, Inc. at 3304 N. Lindbergh, St. Ann, MO 63074, which, in conjunction with defendant Dougherty, fulfilled labor leasing contracts with foreign nationals from the Criminal Enterprise companies who were employed at hotels in Missouri and elsewhere.
- Crystal Management, Inc. (hereinafter "Crystal") at 4861 Glenwood St., Apt. 2, Mission, KS 66202 and 9218 Metcalf Avenue, Ste. 250, Overland Park, KS, a nominee entity, utilized by GLS and defendant Abror, in conjunction with defendant Yunusov, to file fraudulent applications and petitions for H-2B visas in order to obtain work authorizations for foreign nationals abroad and within the

United States in order to fulfill labor leasing contracts in Missouri, Kansas and elsewhere.

- Five Star Cleaning, LLC (hereinafter "Five Star") at 3010 McGee Street, Suite 3, Kansas City, MO 64108, a nominee entity utilized by GLS and defendants Abror, Yunusov, and Shukurov, in conjunction with defendant Fazilov, to obtain work authorization for foreign nationals abroad and within the United States in order to fulfill labor leasing contracts in Missouri, Kansas and elsewhere, and established to conceal unlawful proceeds and unauthorized employment of foreign nationals by GLS and the Enterprise members.
- KC Janitorial Services, LLC at 6933 W. 75th Street, Suite 107, Overland Park, KS 66204, a nominee entity utilized by GLS and defendant Abror, in conjunction with defendant Agzamov, to conceal unlawful proceeds and unauthorized employment of foreign nationals by GLS and the Enterprise members.
- Giant Labor Solutions, LLC at 607 Westport Rd., Suite 600, Kansas City, MO was utilized by defendants Abror, Yunusov, Shukurov, Simon, and Abdoollayev for the purpose of securing and fulfilling labor leasing contracts, petitioning for foreign national workers, and concealing unlawful proceeds through nominee entities.
- Laborfix International, LLC at 15 W. 10th Street, Ste. 1204, Kansas City, MO 65108, was utilized in conjunction with defendant Abdoollayev, to fulfill the labor leasing contract GLS secured with Kato Roofing in Minnesota.
- Midwest Management, Inc. at 5427 Johnson Drive, Ste. 236, Mission, KS 66202, a nominee entity utilized by GLS and defendant Abror, in conjunction with

defendant Kakhkharov, to conceal unlawful proceeds and unauthorized employment of foreign nationals by GLS and the Enterprise members.

- MMC Professional Cleaning, Inc. at 1210 Kelburn Rd., Apt. D, Columbus, OH 43227 and 5427 Johnson Drive, Ste. 236, Mission, KS 66202, a nominee entity utilized by defendant Abror in conjunction with Cooperating Witness A, to conceal unlawful proceeds and the unauthorized employment of foreign nationals by defendant Abror and the Enterprise members, and to act as a subcontractor for Genesis Management, Pro-Line Management, and Anchor Services, Inc. for the purpose of providing foreign nationals to fulfill labor leasing contracts.
- People, Inc. at 3304 N. Lindbergh, Ann, MO 63074 and 12520 Olive Blvd., St. Louis, MO 63141, utilized by GLS and defendant Dougherty to file H-2B petitions for the purpose of obtaining work authorization for foreign nationals abroad and within the United States in order to fulfill labor leasing contracts in Missouri and elsewhere.
- United Management, LLC at 4930 Glenwood, Apt. 2, Mission, KS 66202, a nominee entity, utilized by GLS and defendants Abror and Yunusov, in conjunction with defendant Shukurov, to file H-2B visa applications for the purpose of obtaining work authorization for foreign nationals abroad and within the United States in order to fulfill labor leasing contracts in Missouri and elsewhere.
- Advantage Labor Services, LLC at 1504 Rutgers Lane, St. Charles, MO 63303, a nominee entity utilized by GLS and defendants Abror and Yunusov, in conjunction with defendant Cole, to employ H-2B foreign nationals the Enterprise

petitioned from abroad and within the United States in order to fulfill labor leasing contracts in Wyoming and elsewhere.

- Suncoast Hospitality, Inc. at 18090 Collins Avenue, Suite T-17-89, Sunny Isle Beach, Florida 33160, a nominee entity utilized by GLS, Crystal, and defendant Fazilov, in conjunction with defendant Yunusov, to employ H-2B visa holding foreign nationals the enterprise petitioned from abroad and within the United States in order to fulfill labor leasing contracts in Alabama and elsewhere.

(4) GLS was incorporated on February 3, 2005 by defendant Abror under the laws of the state of Missouri for the purpose of fulfilling labor leasing contracts and therefore was required to pay unemployment taxes to the state of Missouri.

(5) GLS fraudulently failed to report that it had employee wages in Missouri until the second quarter of 2007, and falsely reported eleven employees in the state of Missouri between that time and the date of this indictment. Additionally, GLS fraudulently failed to report that it had employee wages in Kansas until the first quarter of 2008, and falsely reported no more than eleven employees in the state of Kansas between that time and the date of this indictment.

(6) Defendants Abror, Abdoollayev, Dougherty, Yunusov, Fazilov, Shukurov, and other subjects both known and unknown to the grand jury established multiple companies in the states of Kansas and Missouri in order to promote and carry out the activities of the Criminal Enterprise as listed in paragraphs one and three of this indictment.

(7) Defendant Abdoollayev was Vice President and Marketing Manager for GLS and owned and controlled Laborfix International, LLC which was located at his apartment and registered with the State of Missouri. As part of this Enterprise, defendant Abdoollayev secured

and maintained labor leasing contracts and recruited foreign national workers to fulfill these contracts and acted as Vice President for People, Inc.

(8) Defendant Dougherty was Vice President of Sales for GLS and owned, controlled or had a direct interest in the following businesses: People, Inc., registered in the State of Florida, Anchor Building Services, Pro-Line Management, and Hotel and Resort Services, all registered in the State of Missouri. As part of this Enterprise, Dougherty recruited labor leasing clients throughout the United States and fulfilled these contracts with foreign nationals from within the Enterprise.

(9) Defendant Yunusov was Vice President of Sales and Training for GLS and was the Owner/President of Crystal, a business registered in Missouri and Kansas with addresses listed at Yunosov's apartment and at a UPS Store. As part of this Enterprise, Yunusov handled the daily operations of GLS and the Enterprise, recruited both clients and alien workers to fulfill labor leasing contracts, maintained the payroll, and transported workers to and from job site locations throughout the United States.

(10) Defendant Fazilov was the owner of Five Star which was a registered business within the state of Missouri with addresses listed at Fazilov's former apartment in Kansas and at a UPS Store in Missouri. As part of this Enterprise, Fazilov handled payroll for the alien workers and established Five Star for the purpose of shielding GLS from criminal and civil liability regarding the non-payment of employment taxes, workers' compensation and employment of unauthorized foreign nationals, and acted as President and owner of Suncoast Hospitality, Inc.

(11) Cooperating Witness A was the co-owner of GLS with defendant Abror and worked as an employee at MMC Professional Cleaning, Inc. which was registered with the state

of Ohio. As part of the Enterprise, Cooperating Witness A was responsible for payroll and client maintenance through the instructions of defendant Abror.

(12) Defendant Kakhkharov was an employee of GLS and owned Midwest Management, Inc., a business registered with the state of Kansas and located at a UPS outlet. As part of this Enterprise, Kakhkharov acted as a subcontractor for GLS and defendant Abror for the purpose of concealing the employment of unauthorized foreign nationals and the unlawful proceeds generated by the Enterprise.

(13) Defendant Agzamov was an employee of GLS and controlled the operations of KC Janitorial Services, LLC and acted as a subcontractor for GLS and defendant Abror. As part of this Enterprise, Agzamov acted on behalf of defendant Abror to conceal the employment of illegal aliens and unlawful proceeds of the Enterprise.

(14) Defendant Shukurov was the President of Administration for GLS and owned United Management, LLC which was located at a UPS Store. As part of this Enterprise, Shukurov transported workers to and from job site locations, handled the payroll, and acted in a supervisory capacity regarding foreign nationals utilized to fulfill labor leasing contracts.

(15) Defendant Simon acted as a supervisor with GLS and as part of this Enterprise, Simon transported unauthorized foreign nationals to and from job locations in Missouri, Kansas and elsewhere, distributed pay checks to aliens employed by the Enterprise, managed the Criminal Enterprise labor leasing contracts in Wyoming, and handled the housing arrangements for aliens working for the Enterprise.

(16) Defendant Cole was a subcontractor to GLS and responsible for negotiating labor leasing contracts to be fulfilled in Wyoming and elsewhere. As part of this Enterprise, Cole owned and operated Advantage Labor Services, LLC which was a business registered with the

Secretary of State in Missouri, for the purpose of supplying foreign national workers to fulfill labor leasing contracts on behalf of the Enterprise, and he acted as Vice President for Crystal.

(17) As part of the Criminal Enterprise, defendants Abror, Agzamov, and Yunusov assumed, and attempted to assume, the identities of other aliens in order to obtain drivers' licenses and identification cards from the state of Kansas. These assumed identities, as well as shortened versions of their names, were used to register and operate the aforementioned entities and were also used to open business bank accounts and to file fraudulent petitions for alien workers.

(18) The Criminal Enterprise used internet web sites including: http://www.H2Bjobsusa.org; http://www.giantlaborsolutions.com; and http://www.safaritravelusa.com, to solicit and recruit alien workers from both abroad and within the United States and to obtain information regarding these aliens. Following this solicitation and upon agreement with the foreign nationals, the Criminal Enterprise charged fees to petition the Citizenship and Immigration Bureau (CIS) on their behalf, with the fees ranging between $400 to $3,000 depending on the type of visa requested.

**REGULATORY BACKGROUND**

(19) The United States Department of Homeland Security (DHS), Citizenship and Immigration Services (CIS) was an agency of the United States, responsible for processing and reviewing applications for immigration benefits and employment-based visa petitions pursuant to the Immigration and Nationality Act.

(20) The United States Department of Justice (DOJ) Immigration and Naturalization Service (INS) was an agency of the United States, responsible for processing and reviewing applications for immigration benefits and employment-based visa petitions pursuant to the

Immigration and Nationality Act. In this regard, INS ceased to exist in March 2003 when it became the Citizenship and Immigration Services (hereinafter CIS), and therefore the acronyms CIS and INS are used interchangeably hereafter in this indictment.

(21) The United States Department of Labor (DOL), Employment and Training Administration (ETA) was an agency of the United States, responsible for the processing, review, certification, and approval of Applications for Alien Employment (form ETA 750) pursuant to the Immigration and Nationality Act.

(22) The United States Department of Treasury, Internal Revenue Service (IRS) was an agency of the United States responsible for the administration and collection of employment related and income taxes for both businesses and individuals operating within the United States. The term "payroll taxes" includes federal withholding income taxes, Social Security taxes, Medicare taxes, and federal unemployment taxes.

(23) Throughout the United States, each state had its own State Workforce Agency (SWA) authorized by the ETA to administer a portion of the temporary work visa programs covered under the Immigration and Nationality Act.

(24) The Kansas Department of Revenue was an agency within the state government of Kansas responsible for processing and reviewing applications for drivers' licenses, and for the administration, and regulation of drivers' licenses in the state of Kansas.

**Adjustment of Immigration Status by Marriage**

(25) Under the immigration laws, a foreign national who was married to a United States citizen could obtain permanent resident status in the United States, provided that the marriage had been entered into in good faith and that the United States citizen had not entered

into the marriage in exchange for something of value, such as money, or for the sole purpose of enabling the foreign national to obtain permanent resident status in the United States.

(26) In order for a foreign national to obtain permanent resident status on the basis of marriage to a United States citizen, the United States citizen's spouse was required to file a "Petition for Alien Relative" (INS form I-130) on behalf of the foreign national. Consequently, the foreign national's spouse was required to prove that he or she was in fact a United States citizen, to provide certain background information about the marriage, including the location of the marital residence, to certify that the marriage was not entered into for the purpose of evading immigration laws, that is 8 U.S.C. §§ 1154 and 1186a, and to certify under penalty of perjury that such information was true and correct.

(27) The foreign national was required to file with the CIS a completed "Application to Register Permanent Resident or Adjust Status" (INS form I-485), and was required to sign the completed application, certifying under penalty of perjury that the information provided by the foreign national, including information about the foreign national's spouse, was true and correct and that the foreign national was admissible to the United States pursuant to § 212(a) of the Immigration and Nationality Act.

(28) After filing INS forms I-130 and I-485, the foreign national and citizen spouse were required to submit to an interview conducted by CIS examiners for the purpose of verifying, among other things, that the marriage was legitimate and was not entered into in order to obtain permanent resident status for the foreign national. Consequently, if the CIS examiner determined that the marriage had been entered into in exchange for something of value or for the sole purpose of enabling the foreign national to obtain permanent resident status, the foreign national's application for permanent resident status would be denied. Thus, the issue of whether

the foreign national and citizen spouse resided together was a material factor in determining whether the marriage was bona fide.

**H-2B Temporary Work Visa Program**

(29) An H-2B visa was a nonimmigrant visa granted to citizens of other countries seeking to work in the United States on a temporary basis. The H-2B nonimmigrant visa program permitted employers to hire foreign workers to come to the United States and perform temporary nonagricultural services or labor on a one-time, seasonal, peak-load, or intermittent basis. The H-2B visa classification required the Secretary of Homeland Security to consult with appropriate agencies before admitting H-2B nonimmigrants.

(30) Homeland Security regulations required the petitioning employer to apply for a temporary labor certification from the Secretary of Labor advising the CIS as to whether qualified United States workers were available and whether the alien's employment would adversely affect the wages and working conditions of similarly employed United States workers, or a notice that such certification cannot be made, prior to filing an H-2B visa petition with the CIS.

(31) In this regard, there was a 66,000 person visa restriction on the number of foreign workers who may receive initial H-2B visa status during each government fiscal year with returning H-2B workers (extensions) exempted from this limitation. However, employers were still required to file an H-2B application with the Department of Labor for any H-2B returning (extended) workers. Accordingly, the Department of Labor reviewed and processed all H-2B applications on a first in, first out basis, regardless of whether the limit of 66,000 visas had been reached.

(32) Entities seeking to employ temporary H-2B workers must file two original Applications for Alien Employment Certification (form ETA 750) directly with the State Workforce Agency (SWA) serving the area of intended employment. An Application for Alien Employment Certification (form ETA 750) was both an offer of employment to a foreign national by an employer, and a request from the employer to the DOL to authorize the hiring of the foreign national for the designated position.

(33) The Application for Alien Employment Certification included Part A, "Offer of Employment," and Part B, "Statement of Qualifications of Alien." Among other things, an employer was required to certify on the form ETA 750 that sufficient funds were available to pay the wage or salary offered the foreign national, that the foreign national would be employed on or before the date the foreign national proposes entrance into the United States, that the wage offered was not based on commissions, bonuses, or other incentives, and that the offer of employment represented permanent, full time work.

(34) Additionally, the employer was required to provide a geographical work site location where the alien would perform his job, and was required to sign the form ETA 750 under penalty of perjury, attesting that the information contained in the application was true and correct.

(35) Once reviewed, the SWA transmitted the completed application from the employer to the appropriate National Processing Center. However, it was not necessary for the employer to name each temporary foreign worker it wished to employ; instead the employer could submit a request for multiple unnamed alien workers as long as each worker was to perform the same type of work on the same terms and conditions, in the same occupation, in the same area of intended employment during the same period of time. In this regard, certification

was issued to the employer, rather than the worker, and was not transferable from employers or workers.

(36) Consequently, a temporary labor certification was valid only for the number of aliens, the occupation, the geographical area of employment, the specific occupation and duties, and the period of time the employer specified on the Application for Alien Employment Certification, ETA Form 750. Therefore, if the temporary H-2B alien worker entered the United States to work for an employer other than the petitioning employer on the ETA 750 form, their work authorization and immigration status was rendered invalid.

(37) After the DOL certified an employer's Application for Alien Employment, the employer must file with the CIS a separate petition commonly known as a "Petition for Nonimmigrant Worker" (form I-129), along with the certified ETA 750 and approval notice from the DOL. Accordingly, on the form I-129, the employer must certify that it will comply with the terms of the Application for Alien Employment and specify the job in which the foreign national would be employed, the address at which the work would be performed, the wage, the current number of foreign nationals employed, and the employer's gross and net annual income. Lastly, the employer was required to sign the I-129 petition under penalty of perjury, attesting that the petition and the evidence submitted with it was true and correct.

(38) Pursuant to CIS regulations, the petitioner on the form I-129 was the only entity allowed to employ the temporary H-2B alien workers. Thus, if the temporary H-2B alien entered the United States and worked for an employer other than the petitioner, their work authorization and immigration status was rendered invalid.

(39) The Missouri Department of Economic Development (MDED) was a state agency designated by statute for the initial receipt of Applications for Alien Employment Certification (forms ETA 750) on behalf of the DOL.

(40) The Kansas Department of Commerce (KDOC) was a state agency designated by statute for the initial receipt of Applications for Alien Employment Certification (form ETA 750) on behalf of DOL.

**THE ENTERPRISE**

(41) Defendants ASKARKHODJAEV, YUNUSOV, SHUKUROV, DOUGHERTY, FAZILOV, SIMON, ABDOOLLAYEV, COLE, AGZAMOV, and KAKHKHAROV, and others known and unknown to the grand jury, including Giant Labor Solutions, LLC, Crystal Management, Inc., Five Star Cleaning, LLC, ABB Maintenance, Anchor Building Services, Inc., KC Janitorial Services, LLC, Laborfix International LLC, Midwest Management, Inc., MMC Professional Cleaning, Inc., People, Inc., United Management, LLC, Advantage Labor Services, LLC, and Suncoast Hospitality, Inc. constitute the "Enterprise" as that term is defined in 18 U.S.C. § 1961(4), that is, a group of individuals and legal entities associated in fact. Furthermore, the Enterprise composed an ongoing organization whose members functioned as a continuing unit for the common purpose of achieving the objective of the Enterprise, which was engaged in and its activities affected, both interstate and foreign commerce and is herein referred to as the "Criminal Enterprise" or "Enterprise" interchangeably.

**MANNER AND MEANS**

(42) The Enterprise was led by Defendant Abror who participated in the operation and management of the Enterprise as its leader, and directed other members of the Enterprise in carrying out unlawful and other activities in furtherance of the conduct of the Enterprise's affairs.

**Forced Labor Trafficking**

(43) The Enterprise was operated for the purpose of obtaining money by seeking labor leasing contracts, recruiting foreign nationals to come to or remain in the United States for employment, and obtaining and controlling foreign nationals for labor to fulfill these contracts with client hotels and other businesses in locations as described in this indictment.

(44) As part of these contracts with client hotels and other businesses, the Enterprise promised clients it would comply with all pertinent labor and immigration laws, pay all relative employment taxes, and carry proper insurance coverage. However, the Enterprise failed to pay the required employment taxes in the approximate amount of $630,662.67, failed to pay the H-2B workers for all hours worked, failed to pay the H-2B workers overtime, failed to pay the H-2B workers in a manner set forth in the terms, regulations and laws set forth by the DOL and the CIS, defrauded insurance companies in order to obtain the required insurance coverage for their employees, and employed foreign nationals that were not authorized to work in the United States in violation of immigration law.

(45) The Enterprise profited by recruiting foreign nationals from both within the United States and abroad, created internet web sites, and utilized the United States mail in order to facilitate this effort. Specifically, the Enterprise recruited workers in the foreign nationals' home countries and charged them approximately $3,000 to $5,000 per person for what they represented as fees associated with obtaining a visa, and for the cost of transporting them into the United States and placing them in employment within the terms of the H-2B visa. Additionally, the Enterprise sought foreign nationals within the United States whose H-2B visa work authorization status was nearing expiration and collected fees from $400 to $3,000 from these foreign nationals to extend their authorizations. Consequently, many of the foreign nationals

took out loans, or the foreign national's family accrued debt on their behalf, to facilitate the payment of the fees charged by the Enterprise.

(46) The Enterprise petitioned for hundreds of foreign workers through the Missouri Department of Economic Development (MDED), Kansas Department of Commerce (KDOC), DOL and CIS using false or misleading information in their applications in order to obtain certification and approval for H-2B work visa authorizations. The Enterprise then violated the terms of the H-2B visas by placing the foreign nationals in employment with client hotels and other business outside the terms of the H-2B visas. Additionally, for the foreign nationals already in the United States, the Enterprise would fraudulently change their sponsoring employer to one associated with the Enterprise in violation of the visa terms. Further, the Enterprise obtained the term of stay for the visas or the visa extensions for a time period less than promised to the foreign national.

(47) The Enterprise violated United States law and the H-2B visa provisions by fraudulently changing the terms of the visas and/or employing the foreign nationals in violation of the H-2B visa certifications. The Enterprise then required the foreign nationals to work where the Enterprise assigned them. However, to maintain the labor and availability of the foreign nationals as needed by the Enterprise, the Enterprise threatened to cancel the immigration status of foreign nationals who refused to work as directed by the Enterprise. The visas obtained by the Enterprise for the foreign nationals were the workers' only means to remain legally within the United States. Thus, cancellation of their visas would render them present illegally within the United States and without the ability to find other legal employment. Additionally, the Enterprise threatened to charge the families of the foreign nationals in their home countries a fee of $5,000 if they returned to their home country illegally.

(48) The Enterprise either would refuse to allow the foreign nationals to work outside the assigned labor from the Enterprise or, in some instances, allowed the foreign nationals to work at other places of employment if the additional work would not interfere with the work assigned by the Enterprise. Therefore, for a foreign national worker to be released from the assigned employment from the Enterprise altogether, they had to pay a fee of $1,000 to $2,500 to the Enterprise to "freelance" and receive approval. Only after a worker paid the full freelance fee and received approval from the Enterprise would the worker be allowed to leave the work assigned by the Enterprise. Otherwise, the foreign national worker was required to continue to work at all times for the employer assigned by the Enterprise.

(49) The Enterprise was in violation of United States law by paying the foreign nationals on a commission/incentive type basis rather than the prevailing hourly wage as certified to the DOL. Specifically, the Enterprise paid some workers approximately $3.50 per hotel room cleaned. The Enterprise profited by keeping a portion of each foreign national worker's wage, failing to compensate for all hours worked, refusing to pay overtime, and fraudulently retaining all payroll taxes.

(50) The Enterprise charged the foreign nationals additional fees, including transportation fees for driving the foreign national workers between the assigned work location and their apartments; transportation fees for driving the foreign nationals, even against their will, to other locations in the United States to work; uniform fees; miscellaneous and unexplained fees; and fees to petition for extensions on the foreign national workers' visas. These fees were charged regardless of whether an extension on their visa was actually obtained and regardless of whether the term of the stay on the original visa was shorter than promised by the Enterprise. These fees, combined with the lack of payment for hours worked, underpayment for hours

worked, and lack of work assignments, often resulted in the foreign national workers receiving a paycheck with negative earnings. Additionally, the Enterprise ensured that the workers with outstanding debt did not make enough to repay the debt they accrued to obtain the visa, purchase a plane ticket home, or pay for their own living expenses while in the United States.

(51) The Enterprise further profited by requiring the foreign national workers to reside in apartments it exclusively secured and controlled by charging exorbitant rents. Specifically, the Enterprise leased various apartments for $385 to $650 per month while requiring three to twelve foreign nationals to reside in the apartment and charged each of the foreign nationals between $250 and $350 per month for that apartment's rent. The apartments were not sex specific and usually mixed both men and women inside one apartment. The Enterprise provided minimal furniture. The foreign nationals were required to sleep on the floor, mattresses, or air mattresses. Consequently, in assuring compliance with the exclusive control of these living conditions, the Enterprise often threatened to cancel the immigration status of foreign nationals who requested permission to seek alternative housing.

(52) The Enterprise further controlled the foreign national workers placed in the Kansas City area by not allowing them to receive mail. Specifically, the Enterprise maintained keys to the apartments and to the apartment mailboxes and forwarded the workers' mail to the business office of the Enterprise. Additionally, the Enterprise completed the social security applications for the foreign nationals or instructed them regarding applications, and required that the social security cards be mailed directly to the GLS business office or another address chosen by the Enterprise.

**H-2B Visa Fraud**

**Fraudulent Applications for Alien Employment Certification**

(53) Defendant Abror used the Enterprise entities as a means to apply to DOL for Alien Employment Certifications (form ETA 750). Specifically, defendant Abror presented and caused to be presented to DOL, false and fraudulent statements in the supporting documentation for the Applications for Alien Employment Certification.

(54) In this regard, the false and fraudulent statements included but were not limited to the following:

(a) that the foreign nationals would work a specified number of hours per week at a specified rate of pay;

(b) that the wage offered would not be based on commissions, bonuses, or incentives;

(c) that the foreign nationals would perform specific jobs or duties;

(d) that the foreign nationals would work for a particular company at specific geographical locations listed on the forms or in the applications;

(e) that the Criminal Enterprise entity was able to pay the specified salary of the foreign nationals and place them to work upon arrival into the United States.

(55) Additionally, the Enterprise provided false supporting documents to demonstrate temporary versus full-time work requirements in support of their applications. Specifically, the Enterprise compiled charts listing false historical salary schedules and fictitious employees often pre-dating the existence of many of the petitioning companies.

(56) The entities established by defendant Abror and the Enterprise, including Suncoast Hospitality, Inc., United Management, LLC, Laborfix International, LLC, Crystal, and Five Star Cleaning, LLC, were used by the Enterprise as petitioning nominee employers in its effort to obtain H-2B temporary work visas, permitting the Enterprise to fraudulently inflate the need for these workers. Furthermore, these entities handled the payroll functions for the Enterprise allowing it to fraudulently avoid certain liabilities with respect to the payment of taxes, insurance premiums and overtime work benefits; and as nominee entities, they allowed GLS and defendant Abror to conceal and disguise illegal proceeds generated from the racketeering activity.

**Illegal Employment of Aliens Not Authorized to Work in the United States.**

(57) The Criminal Enterprise hired, employed, harbored, induced and transported unauthorized aliens as part of the workforce it used to fulfill contracts with clients for housekeeping, cleaning services and other duties. In this regard, as part of this scheme, the Enterprise defrauded the alien employees, the client hotel/resorts, legitimate competitor labor leasing companies and the United States. Specifically, the Enterprise fraudulently failed to provide the employees with workers' compensation and overtime benefits and jeopardized their immigration status by employing them in a manner contrary to the provisions of immigration law. Additionally, the Enterprise defrauded the hotel/resort clients by employing unauthorized alien workers and failing to provide workers' compensation insurance and deducting payroll taxes as promised. Moreover, the Enterprise defrauded legitimate labor leasing companies by fraudulently reducing the above costs and thus stifling competition, and lastly, the Enterprise defrauded the United States by causing it to issue the limited amount of H-2B visas contrary to immigration law and the regulations prescribed thereunder.

(58) In this regard, some of the aliens entered the United States illegally without inspection, while others entered on B1/B2 visitor visas and F-1 student visas that did not authorize work in the United States. Additionally, some aliens were employed in the United States for the Enterprise under expired J-1 work visas.

(59) The Enterprise also fraudulently utilized aliens on H-2B temporary work visas which authorized them to work for a specific job in a certain geographical area within the United States. However, the Enterprise employed these H-2B visa holders in unauthorized positions or in unauthorized geographical areas in violation of DOL and CIS regulations.

**THE RACKETEERING VIOLATION**

(60) From on or about January 2001, continuing through May 2009, both dates being approximate, in the Western District of Missouri and elsewhere,

Abrorkhodja Askarkhodjaev,

Nodir Yunusov,

Rustamjon Shukurov,

Kristin Dougherty,

Ilkham Fazilov,

Viorel Simon,

Nodirbek N. Abdoollayev,

Andrew Cole,

Sandjar Agzamov,

and

Jakhongir Kakhkharov,

defendants herein, together with persons both known and unknown to the Grand Jury, being

persons employed by and associated with the Criminal Enterprise as described above, which Enterprise engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity, that is, through the commission of Racketeering Acts 1 through 16 as set forth in paragraphs 61 through 89 below.

**THE PATTERN OF RACKETEERING ACTIVITY**

(61) The pattern of racketeering activity, as that term is defined in 18 U.S.C. §§ 1961(1) and 1961(5), consisted of the following acts.

**Racketeering Act One**
**(Forced Labor Trafficking)**

(62) The defendants named below committed the following acts, any one of which alone constitutes the commission of Racketeering Act One.

**Racketeering Act One A**

(63) Beginning on or about February 1, 2009, and continuing through on or about May 27, 2009, in the Western District of Missouri and elsewhere, ABRORKHODJA ASKARKHODJAEV, NODIR YUNUSOV, ANDREW COLE, and VIOREL SIMON, defendants herein, aiding and abetting each other and others, knowingly provided and obtained, and attempted to provide and obtain, the labor and services of the person from the Dominican Republic, as identified in Racketeering Acts 1A.1 through 1A.21 below, and did so by means of: (a) serious harm and threats of serious harm to said person and another person; (b) the abuse and threatened abuse of law and legal process; and, (c) a scheme, plan, and pattern intended to cause said person to believe that, if said person did not perform such labor and services, that said person and another person would suffer serious harm.

| **Racketeering Act** | **Victim Identifier** |
|---|---|
| 1A.1 | Victim #1 |
| 1A.2 | Victim #2 |
| 1A.3 | Victim #3 |
| 1A.4 | Victim #4 |
| 1A.5 | Victim #5 |
| 1A.6 | Victim #6 |
| 1A.7 | Victim #7 |
| 1A.8 | Victim #8 |
| 1A.9 | Victim #9 |
| 1A.10 | Victim #10 |
| 1A.11 | Victim #11 |
| 1A.12 | Victim #12 |
| 1A.13 | Victim #13 |
| 1A.14 | Victim #14 |
| 1A.15 | Victim #15 |
| 1A.16 | Victim #16 |
| 1A.17 | Victim #17 |
| 1A.18 | Victim #18 |
| 1A.19 | Victim #19 |
| 1A.20 | Victim #20 |
| 1A.21 | Victim #21 |

In violation of 18 U.S.C. §§ 1589(a), 1594(a), and 2.

**Racketeering Act One B**

(64) Beginning on or about February 1, 2008, and continuing through May 27, 2009, in

the Western District of Missouri and elsewhere, ABRORKHODJA ASKARKHODJAEV, NODIR YUNUSOV, RUSTAMJON SHUKUROV, ILKHAM FAZILOV, and VIOREL SIMON, defendants herein, aiding and abetting each other and others, knowingly provided and obtained, and attempted to provide and obtain, the labor and services of the person from the Republic of the Philippines, as identified in Racketeering Acts 1B.1 through 1B.39 below, and did so by means of: (a) serious harm and threats of serious harm to said person and another person; (b) the abuse and threatened abuse of law and legal process; and, (c) a scheme, plan, and pattern intended to cause said person to believe that, if said person did not perform such labor and services, that said person and another person would suffer serious harm.

| **Racketeering Act** | **Victim Identifier** |
|---|---|
| 1B.1 | Victim #22 |
| 1B.2 | Victim #23 |
| 1B.3 | Victim #24 |
| 1B.4 | Victim #25 |
| 1B.5 | Victim #26 |
| 1B.6 | Victim #27 |
| 1B.7 | Victim #28 |
| 1B.8 | Victim #29 |
| 1B.9 | Victim #30 |
| 1B.10 | Victim #31 |
| 1B.11 | Victim #32 |
| 1B.12 | Victim #33 |
| 1B.13 | Victim #34 |
| 1B.14 | Victim #35 |
| 1B.15 | Victim #36 |

| | |
|---|---|
| 1B.16 | Victim #37 |
| 1B.17 | Victim #38 |
| 1B.18 | Victim #39 |
| 1B.19 | Victim #40 |
| 1B.20 | Victim #41 |
| 1B.21 | Victim #42 |
| 1B.22 | Victim #43 |
| 1B.23 | Victim #44 |
| 1B.24 | Victim #45 |
| 1B.25 | Victim #46 |
| 1B.26 | Victim #47 |
| 1B.27 | Victim #48 |
| 1B.28 | Victim #49 |
| 1B.29 | Victim #50 |
| 1B.30 | Victim #51 |
| 1B.31 | Victim #52 |
| 1B.32 | Victim #53 |
| 1B.33 | Victim #54 |
| 1B.34 | Victim #55 |
| 1B.35 | Victim #56 |
| 1B.36 | Victim #57 |
| 1B.37 | Victim #58 |
| 1B.38 | Victim #59 |
| 1B.39 | Victim #60 |

In violation of 18 U.S.C. §§ 1589(a), 1594(a), and 2.

**Racketeering Act Two**
**(Identity Theft)**

(65) The defendants named below committed the following acts, any one of which alone constitutes the commission of Racketeering Act Two.

**Racketeering Act Two A**

(66) On or about February 19, 2002, in the Southern District of Ohio, ABRORKHODJA ASKARKHODJAEV, defendant herein, knowingly used in or affecting interstate or foreign commerce, without lawful authority, a means of identification of another person, to wit, the name of Abdumajid Maksudov, for the purpose of incorporating MMC Professional Cleaning, Inc., with the intent to commit or to aid or abet, any unlawful activity that constitutes a violation of federal law, that is, mail fraud regarding the aforementioned scheme to secure labor leasing contracts as described in paragraphs one through fifty-nine of this indictment, contrary to the provisions of 18 U.S.C. § 1341; and as a result of the offense the defendant or any other individual committing the offense obtained anything of value aggregating $1,000 or more during any one year period.

In violation of 18 U.S.C. §§ 1028(a)(7) and (b)(1)(D).

**Racketeering Act Two B**

(67) On or about August 20, 2002, in the District of Kansas, ABRORKHODJA ASKARKHODJAEV, defendant herein, knowingly used in or affecting interstate or foreign commerce, without lawful authority, a means of identification of another person, to wit, the name of Abdumajid Maksudov, for the purpose of obtaining a Kansas driver's license and identification card, with the intent to commit or aid or abet, any unlawful activity that constitutes a violation of federal law, that is, mail fraud regarding the aforementioned scheme to secure labor leasing contracts as described in paragraphs one through fifty-nine of this indictment, contrary to the

provisions of 18 U.S.C. § 1341; and as a result of the offense the defendant or any other individual committing the offense obtained anything of value aggregating $1,000 or more during any one year period.

In violation of 18 U.S.C. §§ 1028(a)(7) and (b)(1)(D).

**Racketeering Act Two C**

(68) On or about November 4, 2002, in the Western District of Missouri and elsewhere, ABRORKHODJA ASKARKHODJAEV, defendant herein, knowingly used in or affecting interstate or foreign commerce, without lawful authority, a means of identification of another person, to wit, the name of Abdumajid Maksudov, for the purpose of establishing MMC Professional Cleaning, Inc. account number 90013891, at First National Bank, with the intent to commit or to aid or abet, any unlawful activity that constitutes a violation of federal law, that is, mail fraud regarding the aforementioned scheme to secure labor leasing contracts as described in paragraphs one through fifty-nine of this indictment, contrary to the provisions of 18 U.S.C. § 1341; and as a result of the offense the defendant or any other individual committing the offense obtained anything of value aggregating $1,000 or more during any one year period.

In violation of 18 U.S.C. §§ 1028(a)(7) and (b)(1)(D).

**Racketeering Act Two D**

(69) On or about June 19, 2003, in the Western District of Missouri and elsewhere, ABRORKHODJA ASKARKHODJAEV and NODIRBEK ABDOOLLAYEV, defendants herein, aiding and abetting each other and others, knowingly used in or affecting interstate or foreign commerce, without lawful authority, a means of identification of another person, to wit, the name of Abdumajid Maksudov for the purpose of establishing defendant Abdoollayev as a signatory of the MMC Professional Cleaning, Inc. account number 90013891, with First National Bank, with

the intent to commit or to aid or abet, any unlawful activity that constitutes a violation of federal law, that is, mail fraud regarding the aforementioned scheme to secure labor leasing contracts as described in paragraphs one through fifty-nine of this indictment, contrary to the provisions of 18 U.S.C. § 1341; and as a result of the offense the defendant or any other individual committing the offense obtained anything of value aggregating $1,000 or more during any one year period.

In violation of 18 U.S.C. §§ 1028(a)(7), (b)(1)(D), and 2.

**Racketeering Act Three**
**(Identity Theft)**

(70) On or about April 26, 2005, in the Western District of Missouri and elsewhere, SANDJAR AGZAMOV, defendant herein, knowingly used in or affecting interstate or foreign commerce, without lawful authority, a means of identification of another person, to wit, the name of Farukh Akhmedov, for the purpose of establishing KC Janitorial Services, LLC account number 5091116607, at Bank of America, with the intent to commit or aid or abet, any unlawful activity that constitutes a violation of federal law, that is, mail fraud regarding the aforementioned scheme to secure labor leasing contracts as described in paragraphs one through fifty-nine of this indictment, contrary to the provisions of 18 U.S.C. § 1341; and as a result of the offense the defendant or any other individual committing the offense obtained anything of value aggregating $1,000 or more during any one year period.

In violation of 18 U.S.C. §§ 1028(a)(7) and (b)(1)(D).

**Racketeering Act Four**
**(Harboring Illegal Aliens)**

(71) Beginning on or about November 2002 and continuing through on or about September 2005, in the Western District of Missouri and elsewhere, ABRORKHODJA ASKARKHODJAEV defendant herein, in conjunction with MMC Professional Cleaning, Inc.

knowingly and in reckless disregard of the fact that an alien, namely, one of the persons below listed, had come to, entered and remained in the United States in violation of law, concealed, harbored, and shielded from detection such alien in buildings and other places for the purpose of commercial advantage and private financial gain:

| ALIEN LAST NAME | FIRST NAME |
|---|---|
| Abdukarimova | Matlyuba Kasimovn |
| Abladjanova | Zulfia |
| Achilov | Bakhtiyor |
| Adilov | Elyor |
| AGZAMOV | SANDJAR |
| Akhmedova | Nazira |
| Alimova | Dano |
| Alimbaeva | Rana |
| Amidjanova | Mavjuda |
| Baltavaeva | Mukhabbat |
| Brana | Vasiliy |
| Brozova | Andrea |
| Dadaboeva | Karima |
| Daminov | Otabek |
| Fazilova | Umida |
| Hennel | Villiam |
| Herrera | Isaias |
| Ibragimov | Otabek |
| Iminova | Umrinisa |
| Inogamova | Muparrakh |
| Isakova | Hamidullo Khabibullayevie |
| Kasimova | Zukhra |
| Khakimdjanov | Aziz |
| Khayrutdinov | Dmitriy Valeryevichi |
| Khikmatullaeva | Munavar |
| Kholmukhamedov | Shovkat |
| Khojaeva | Suraiyo |
| Krivonosova | Natalia |
| Kropanev | Dmitry A. |
| Kurbanova | Khalchan |
| Kurzok | Peter |
| Madjitov | Ravshanbek |
| Magzumova | Nasiba Abidovna |
| Makhamadjonov | Usmon Makhamad |
| Mamyrbaev | Gunar |
| Matniyazov | Farkhod |
| Mengr | Jiri |
| Meyer | Nijole |
| Mikhaylenka | Anton |
| Mirazimova | Gulsara |
| Nazarova | Nazira |
| Nuriddinova | Sevar |
| Nuriyev | Shakhobidin |
| Parada | Krystina |
| Parmonjulova | Mashkura |
| Paz | Dennis |

| ALIEN LAST NAME | FIRST NAME |
|---|---|
| Podchahanova | Gulnora |
| Pognaeva | Olesya |
| Pulatov | Tokhir |
| Qalandarov | Ahmadjon |
| Rahimov | Akmal |
| Rakhimberdiev | Kurshid |
| Rakhmanov | Rikhsitilla |
| Rasi | Krisztina |
| Salimova | Gulbakhor |
| Saraikina | Viktoriya |
| Seitkaliyeva | Nurlygul |
| Semionicheva | Natalia |
| Shakirova | Raisa |
| Sobiech | Tomasz |
| Sultanova | Metluba (Matlyuba) |
| Tashpulatov | Shavkat |
| Umarkhodjaev | Elbek Ulmasovich |
| Vernigora | Natalya |
| Votavova | Eva |
| Waracki | Mariusz Karol |
| Yadgekkhodjaev | Kamel |
| Yanechko | Anatoly |
| Yunusov | Abdumannop |
| Yunusov | Khayrulla |
| Yusupova | Shoira |
| Yusupova | Lobarkhon |
| Zakirova | Barno |
| Zarechnyi | Aleksandr |
| Zdarilova | Dagmar |
| Zukhritdinova | Lola |

In violation of 8 U.S.C. § 1324(a)(1)(A)(iii).

**Racketeering Act Five**
**(Harboring Illegal Aliens)**

(72) Beginning on or about January 1, 2005 and continuing through on or about June 15, 2007, in the Western District of Missouri and elsewhere, ABRORKHODJA ASKARKHODJAEV and SANDJAR AGZAMOV, defendants herein, aiding and abetting each other and others, in conjunction with Giant Labor Solutions, LLC, and KC Janitorial Services, LLC, knowingly and in reckless disregard of the fact that an alien, namely, one of the persons below listed, had come to, entered and remained in the United States in violation of law, concealed, harbored and shielded from detection, such alien in buildings and other places for the purpose of commercial advantage and private financial gain:

| ALIEN LAST NAME | FIRST NAME |
|---|---|
| Abdolhossein | Afshari |
| Alimova | Dano |
| Akhatov | Aynur |
| Akhmedov | Farukh |
| Atabaeva | Gulnoza |
| Aushakimova | Aizhan |
| Baisov | Alisher |
| Balasevicuite | Joana |
| Beltran | Irene |
| Bratchenkova | Olesya |
| Castillo | Ashli Rubi Estrada |
| Chirkov | Eugeniy |
| Coto | Alberto Salazar |
| Daurenbekova | Assel |
| Fazilov | Ilkham |
| Fazilova | Umida |
| Fernandez | Erick |
| Flores | Sahmino (Sabino) |
| Gomez | Maria |
| Hernandez | Rubi |
| Hrebenkin | Andriy |
| Ibarra | Alejandro |
| Ibragimov | Bokhodir |
| IBRAGIMOV | OTABEK |
| Kadeedang | Kanokwan |
| Kadirova | Mavlyuda |
| Karimov | Abdurazak |
| Karzhaubayeva | Indira |
| Khankhodjaeva | Zamira |
| Khodjimetov | Dilmunod |
| Kholtaev | Shukhratilla |
| Khojaeva | Suraiyo |
| Klebleya | Aziz |
| Konuk | Ahmet |
| Kovacova | Julia |
| Kozhabayeva | Aisulu |
| Kuliyeva | Rejepgul |
| Lutska | Olga |
| Lyubavina | Alexandrea |
| Mazhirova | Assel |
| Melendres | Jose |
| Mirkhazov | Rail |
| Mirkhazov | Ruslan |
| Mirzahojaev | Sattor |
| Mirzahojaeva | Ogida |
| Mubarakshin | Bulat |
| Mukumov | Umid |
| Mygovych | Tamila |
| Narkamba | Maureen Joan |
| Nasef | Wael |
| Nazarova | Nazira |
| Nizamov | Avazbek |
| Normatov | Shavkat |
| Nuriyev | Shakhobidin |
| Nurk | Margus |
| Nurmuhamedov | Erkin |
| Pakhomov | Arkadiy |
| Pancatekid | Kamonchanok |

| ALIEN LAST NAME | FIRST NAME |
|---|---|
| Pinto | Ana |
| Prudka | Kateryna |
| Puzanova | Ganna |
| Rahimov | Ruslan K. |
| Rakhimberdiev | Kurshid |
| Rakhmanov | Rikhsitilla |
| Recinos | Gladis |
| Reznik | Sasha |
| Rezreihov | Arkadiy |
| Ribar | Dobrijela |
| Ruzieva | Mukarram |
| Salas | Claudia |
| Shorohova | Oksanna |
| SHUKUROV | RUSTAMJON |
| Shunichi | Ishida |
| Solikhov | Nizomiddin |
| Stanislavovna | Anna Kasyanova |
| Stanislaw | Janusz |
| Subkhaughlova | Rozaliya |
| Sultanova | Metluba (Matlyuba) |
| Tashbaev | Nurulla |
| Tejada | Norma |
| Valeryevna | Natalia |
| Vladimirovna | Elena |
| Warsaw | Natalia |
| Yessenkulova | Jamilya |
| Yuldashev | Otabek |
| YULDASHEV | NODIR |
| Yunusov | Khayrulla |
| YUNUSOV | NODIR |
| Yusupov | Zokhid |
| Zamorron | Juan |
| Zolotareva | Yana |
| Zukhritdinova | Lola |

In violation of 8 U.S.C. § 1324(a)(1)(A)(iii) and 18 U.S.C. § 2.

**Racketeering Act Six**
**(Mail Fraud)**

(73) The defendant named below committed the following acts, any one of which alone constitutes the commission of Racketeering Act Six.

(74) On or about the dates listed below, ABRORKHODJA ASKARKHODJAEV, defendant herein, in the Western District of Missouri, for the purpose of executing the aforementioned scheme and artifice to defraud in obtaining labor leasing contracts as described in paragraphs one through fifty-nine of this indictment, by means of material false and fraudulent

representations, and in order to effect the scheme and artifice to defraud, did knowingly cause to be deposited in an authorized depository for mail matter, the following checks to be sent and delivered by the United States Postal Service from the below listed entities to the Giant Labor Solutions, LLC office at 607 Westport Road, Kansas City, Missouri:

| **Racketeering Act** | **Date of Mailing** | **Description of Mailed Check** | **Amount of Proceeds** |
|---|---|---|---|
| 6 A | 7/28/05 | Check # 92111 from the Hilton-Embassy Suites Hotel | $10,483.24 |
| 6 B | 7/28/05 | Check # 88807 from the Hotel Phillips | 5,361.00 |
| 6 C | 7/26/05 | Check # 114785 from Pointe Royale Properties | 2,020.99 |
| 6 D | 12/5/05 | Check # 51256 from Westin Crown Center | 15,476.18 |
| 6 E | 12/21/05 | Check # 51525 from Westin Crown Center | 11,480.63 |
| 6 F | 12/21/05 | Check # 105988 from Hilton-Embassy Suites | 3,082.75 |
| 6 G | 12/22/05 | Check # 100174 from Hotel Phillips | 9,498.00 |
| 6 H | 12/21/05 | Check # 6127 from Hilton Doubletree Hotel | 731.50 |
| 6 I | 12/22/05 | Check # 6150 from Hilton Doubletree Hotel | 8,331.50 |
| 6 J | 5/3/06 | Check # 53391 from Westin Crown Center | 20,395.99 |
| 6 K | 4/26/06 | Check # 53278 from Westin Crown Center | 7,553.82 |
| 6 L | 5/1/06 | Check # 7541 from Hilton Doubletree Hotel | 7,205.25 |
| 6 M | 6/1/06 | Check # 53821 from Westin Crown Center | 13,474.01 |

| Racketeering Act | Date of Mailing | Description of Mailed Check | Amount of Proceeds |
|---|---|---|---|
| 6 N | 6/1/06 | Check # 53706 from Westin Crown Center | 27,194.71 |
| 6 O | 7/12/06 | Check # 54359 from Westin Crown Center | 28,362.76 |
| 6 P | 8/3/06 | Check # 118142 from Hotel Phillips | 14,609.67 |
| 6 Q | 8/2/06 | Check # 8567 from Hilton Doubletree Hotel | 13,479.43 |
| 6 R | 8/23/06 | Check # 55006 from Westin Crown Center | 57,476.28 |
| 6 S | 8/30/06 | Check # 55101 from Westin Crown Center | 32,699.58 |
| 6 T | 9/22/06 | Check # 7409 from Branson Creek Golf Club | 2,055.10 |
| 6 U | 9/27/06 | Check # 55458 from Westin Crown Center | 50,758.52 |
| 6 V | 11/3/06 | Check # 9499 from Doubletree Hotel | 26,992.96 |
| 6 W | 11/21/06 | Check # 134927 from Hilton-Embassy Suites Hotel | 7,830.38 |
| 6 X | 11/17/06 | Check # 9656 from Hilton Doubletree Hotel | 5,842.74 |
| 6 Y | 11/14/06 | Check # 7526 from Branson Creek Golf Club | 1,077.50 |
| 6 Z | 12/6/06 | Check # 56634 from Westin Crown Center | 42,154.14 |
| 6 AA | 2/14/07 | Check # 57572 from Westin Crown Center | 13,055.28 |
| 6 BB | 2/15/07 | Check # 23911 from Sheraton-Overland Park | 4,161.31 |
| 6 CC | 4/18/07 | Check # 58503 from Westin Crown Center | 23,912.88 |

| Racketeering Act | Date of Mailing | Description of Mailed Check | Amount of Proceeds |
|---|---|---|---|
| 6 DD | 4/25/07 | Check # 147314 from Hilton-Embassy Suites Hotel | 6,336.19 |
| 6 EE | 4/27/07 | Check # 143033 from Hotel Phillips | 2,540.00 |
| 6 FF | 5/23/07 | Check # 59008 from Westin Crown Center | 23,009.54 |
| 6 GG | 6/6/07 | Check # 59248 from Westin Crown Center | 21,377.48 |
| 6 HH | 6/13/07 | Check # 59441 from Westin Crown Center | 10,515.38 |
| 6 II | 6/13/07 | Check # 1105 from Hilton Doubletree Hotel | 10,047.42 |
| 6 JJ | 6/15/07 | Check # 600818 from Union Station Restaurant Groups | 2,771.16 |
| 6 KK | 6/28/07 | Check # 152749 from Hilton-Embassy Suites | 4,277.39 |
| 6 LL | 6/28/07 | Check # 148841 from Hotel Phillips | 940.00 |
| 6 MM | 6/27/07 | Check # 59651 from Westin Crown Center | 11,984.22 |
| 6 NN | 6/20/07 | Check # 59554 from Westin Crown Center | 13,568.60 |
| 6 OO | 7/19/07 | Check # 64569 from Kato Roofing | 2,040.00 |
| 6 PP | 7/18/07 | Check # 7221 from High Side Adventure Tours | 2,812.50 |
| 6 QQ | 7/20/07 | Check # 150853 from Hotel Phillips | 1,870.00 |
| 6 RR | 7/20/07 | Check # 4551378 from Marriott Convention Center | 768.00 |
| 6 SS | 7/18/07 | Check # 60179 from Westin Crown Center | 906.75 |

| Racketeering Act | Date of Mailing | Description of Mailed Check | Amount of Proceeds |
|---|---|---|---|
| 6 TT | 7/11/07 | Check # 59853 from Westin Crown Center | 26,228.89 |
| 6 UU | 7/26/07 | Check # 151388 from Hotel Phillips | 930.00 |
| 6 VV | 7/23/07 | Check # 125 from Sheraton-Plaza | 7,683.04 |
| 6 WW | 7/26/07 | Check # 60277 from Westin Crown Center | 21,045.40 |
| 6 XX | 7/26/07 | Check # 64603 from Kato Roofing | 2,296.00 |
| 6 YY | 7/25/07 | Check # 1446 from Hilton-Doubletree Hotel | 15,973.07 |
| 6 ZZ | 8/8/07 | Check # 60513 from Westin Crown Center | 13,901.57 |
| 6 AAA | 8/9/07 | Check # 1599 from Hilton-Doubletree Hotel | 16,540.92 |
| 6 BBB | 8/7/07 | Check # 4591997 from Marriott-Overland Park | 1,485.01 |
| 6 CCC | 8/10/07 | Check # 64667 from Kato Roofing | 2,904.00 |
| 6 DDD | 8/9/07 | Check # 152636 from Hotel Phillips | 300.00 |
| 6 EEE | 8/29/07 | Check # 60798 from Westin Crown Center | 35,366.42 |
| 6 FFF | 8/30/07 | Check # 158203 from Hilton-Embassy Suites | 2,676.63 |
| 6 GGG | 8/30/07 | Check # 154619 from Hotel Phillips | 560.00 |
| 6 HHH | 8/30/07 | Check # 1793 from Hilton-Doubletree Hotel | 275.44 |
| 6 III | 9/18/07 | Check # 61106 from Westin Crown Center | 50,522.29 |

| Racketeering Act | Date of Mailing | Description of Mailed Check | Amount of Proceeds |
|---|---|---|---|
| 6 JJJ | 9/18/07 | Check # 61105 from Westin Crown Center | 1,750.14 |
| 6 KKK | 10/9/07 | Check # 600913 from Union Station Restaurant Group | 1,408.60 |
| 6 LLL | 10/2/07 | Check # 589 from Sheraton-Plaza | 1,431.01 |
| 6 MMM | 10/1/07 | Check # 160888 from Hilton-Embassy Suites Hotel | 4,894.89 |
| 6 NNN | 10/3/07 | Check # 61418 from Westin Crown Center | 29,783.65 |
| 6 OOO | 11/15/07 | Check # 62032 from Westin Crown Center | 31,399.28 |
| 6 PPP | 12/10/07 | Check # 62351 from Westin Crown Center | 30,400.93 |
| 6 QQQ | 12/7/07 | Check # 12132 from Sheraton-Overland Park | 1,467.77 |
| 6 RRR | 2/20/08 | Check # 63275 from Westin Crown Center | 18,437.26 |
| 6 SSS | 3/26/08 | Check # 63785 from Westin Crown Center | 17,094.89 |
| 6 TTT | 5/6/08 | Check # 64273 from Westin Crown Center | 17,900.25 |
| 6 UUU | 6/5/08 | Check # 64705 from Westin Crown Center | 11,416.25 |

In violation of 18 U.S.C. § 1341.

**Racketeering Act Seven**
**(Money Laundering Conspiracy)**

(75) From on or about August 15, 2005, and continuing through on or about June 10, 2008, in the Western District of Missouri and elsewhere, ABRORKHODJA ASKARKHODJAEV, ILKHAM FAZILOV, SANDJAR AGZAMOV, and JAKHONGIR KAKHKHAROV, defendants

herein, did knowingly combine, conspire, and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of 18 U.S.C. § 1956, to wit: to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, mail fraud, as part of the aforementioned scheme to obtain labor leasing contracts, as described in paragraphs one through fifty-nine of this indictment, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, contrary to 18 U.S.C. § 1956(a)(1)(B)(i).

In violation of 18 U.S.C. § 1956(h).

**Racketeering Act Eight**
**(Transportation of Illegal Aliens)**

(76) Beginning on or about January 15, 2009, and continuing through on or about January 17, 2009, in the Western District of Missouri and elsewhere, ABRORKHODJA ASKARKHODJAEV, NODIR YUNUSOV, VIOREL SIMON, and RUSTAMJON SHUKUROV, defendants herein, aiding and abetting each other and others, and in conjunction with Crystal Management, Inc., knowingly and in reckless disregard of the fact that one of the below listed twelve aliens had come to, entered and remained in the United States in violation of law, did transport and move and attempt to transport and move such alien within the United States by means of transportation or otherwise, that is, by transporting the alien by vehicle to Wyoming from

Kansas City, Missouri, in furtherance of such violation of law for the purpose of commercial advantage and private financial gain:

| ALIEN LAST NAME | FIRST NAME |
|---|---|
| Iasac | Elena |
| Chenih | Lidia |
| Brant | Novlyn |
| Henry | Ann Marie |
| Buchanan | Gary |
| Sheilds | Sherin |
| Folks | Shernette |
| Forde | Bridgette |
| Henlon | Jacquelin |
| Dickson | Marcia |
| Daley | Veneshia |
| Stone | Rhomio |

In violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), (a)(1)(A)(v)(II), and (a)(1)(B)(ii).

**Racketeering Act Nine**
**Fraudulent Application for Alien Employment Certification**
**(Visa Fraud)**

(77) The defendants named below committed the following acts, any of one of which alone constitutes the commission of Racketeering Act Nine.

(78) On or about the dates listed below, ABRORKHODJA ASKARKHODJAEV, NODIR YUNUSOV, RUSTAMJON SHUKUROV, ILKHAM FAZILOV, and NODIRBEK ABDOOLLAYEV, defendants herein, aiding and abetting each other and others, in the Western District of Missouri and elsewhere, did knowingly make under oath and subscribe as true under penalty of perjury, pursuant to 28 U.S.C. § 1746, a false statement with respect to a material fact in an application required by the immigration laws or regulations prescribed thereunder, to the DOL in an application for Alien Employment Certification, to wit: form ETA 750, Application for Alien Employment, and as indicated in paragraph fifty-four of this indictment, in that the below listed defendants falsely attested the following: that Giant Labor Solutions, LLC, Crystal Management,

Inc, Laborfix International LLC, and Five Star Cleaning, LLC annually employed an inflated number of workers; that these entities compensated workers through an hourly prevailing wage based on a forty hour week, rather than by commissions, bonuses and other incentives; that these entities were prepared to employ alien workers on and before their proposed entrance into the United States; and that the work conditions and occupational environment provided by these entities were not contrary to federal, state and local law, which statements the above defendants then and there knew were false, that is, the above listed entities did not employ the amount of workers claimed; that these entities did not compensate their workers through the prevailing wage based on a forty hour week; that the entities were not prepared to employ alien workers on and before their proposed entrance into the United States, and that the work conditions and occupational environment provided by these entities was contrary to federal, state and local law:

| Racketeering Act | Date | Defendant | No. Of Requested Workers | ETA 750 Case Number |
|---|---|---|---|---|
| 9 A | January 5, 2007 | Askarkhodjaev | 200 | C-07064-23292 |
| 9 B | November 29, 2007 | Askarkhodjaev | 110 | C-08017-35075 |
| 9 C | November 29, 2007 | Askarkhodjaev | 174 | C-07362-33099 |
| 9 D | April 29, 2008 | Yunusov | 135 | C-08142-37125 |
| 9 E | April 29, 2008 | Yunusov | 129 | C-08141-37107 |
| 9 F | May 12, 2008 | Yunusov | 37 | C-08161-37308 |
| 9 G | May 20, 2008 | Fazilov | 87 | C-08168-37386 |
| 9 H | August 6, 2008 | Shukurov | 265 | Kansas |
| 9 I | September 3, 2008 | Shukurov | 198 | Missouri |
| 9 J | September 30, 2008 | Askarkhodjaev | 95 | C-08310-40907 |
| 9 K | September 30, 2008 | Askarkhodjaev | 79 | C-08303-40473 |
| 9 L | October 30, 2008 | Askarkhodjaev | 40 | C-08336-42635 |
| 9 M | November 7, 2007 | Abdoollayev | 50 | C-07353-32386 |

| Racketeering Act | Date | Defendant | No. Of Requested Workers | ETA 750 Case Number |
|---|---|---|---|---|
| 9 N | November 7, 2007 | Abdoollayev | 112 | C-07344-31673 |

In violation of 18 U.S.C. §§ 1546(a) and 2.

**Racketeering Act Ten**
**(Harboring Illegal Aliens)**

(79) Beginning on or about July 9, 2007, and continuing through on or about February 8, 2008, in the Western District of Missouri and elsewhere, ABRORKHODJA ASKARKHODJAEV and JAKHONGIR KAKHKHAROV, defendants herein, aiding and abetting each other and others, in conjunction with Giant Labor Solutions, LLC, and Midwest Management, Inc., knowingly and in reckless disregard of the fact that an alien, namely, one of the persons below listed, had come to, entered and remained in the United States in violation of law, concealed, harbored and shielded from detection such alien in buildings and other places for the purpose of commercial advantage and private financial gain:

| ALIEN LAST NAME | FIRST NAME |
|---|---|
| Assainova | Rika |
| Alimova | Dano |
| Coto | Alberto Salazar |
| Flores | Sahmino (Sabino) |
| Francois | Vesnel (Vesta) |
| Furadilov | Daniyarbek |
| Gonzalez | Jorge |
| Haragimova | Akmarat |
| Horev | Tatyana |
| Karnakbayeva | Malika |
| Kholtaev | Shukhratilla |
| Kuliyeva | Rejepgul |
| Khojaeva | Suriayo |
| Mendez | Arturo Castrejon |
| Narkamba | Maureen Joan |
| Nazarova | Nazira |
| Pakhomov | Arkadiy |
| Recinos | Gladis |
| Sarenao | Davor |

| | |
|---|---|
| Shunichi | Ishida |
| Subkhaughlova | Rozaliya |
| Tashbaev | Nurulla |
| Tejada | Norma |
| Zamorron | Juan |

In violation of 8 U.S.C. § 1324(a)(1)(A)(iii) and 18 U.S.C. § 2.

**Racketeering Act Eleven**
**Fraudulent Petition for Nonimmigrant Worker**
**(Visa Fraud)**

(80) The defendants named below committed the following acts, any one of which alone constitutes the commission of Racketeering Act Eleven.

(81) On or about the dates listed below, ABRORKHODJA ASKARKHODJAEV, NODIR YUNUSOV, ILKHAM FAZILOV, and NODIRBEK ABDOOLLAYEV, defendants herein, aiding and abetting each other and others, in the Western District of Missouri and elsewhere, did knowingly make under oath and subscribe as true under penalty of perjury pursuant to 28 U.S.C. § 1746, a false statement with respect to a material fact in an application, required by the Immigration laws and regulations prescribed thereunder, to wit: INS form I-129 "Petition for Nonimmigrant Worker," containing the below listed material false statements, which the defendants then and there knew were false, in that, the aliens were not all employed for light cleaning and maintenance or housekeepers on a full time basis; that the aliens did not all earn the weekly wage specified; that the aliens were not all employed at the specified locations within the states of Kansas or Missouri; that the companies listed including Giant Labor Solutions, LLC, Crystal Management, Inc, Laborfix International, LLC, and Five Star Cleaning, LLC, did not employ the number of workers stated; and that these entities did not earn the amount of annual gross and net income claimed:

| Racketeering Act | Date | Defendants | False Statements by Defendant | Petition Number |
|---|---|---|---|---|
| 11A | July 12, 2007 | Askarkhodjaev Abdoollayev | that 33 aliens would be employed for light cleaning duties as housekeepers on a full-time basis by GLS earning a weekly wage of $271.60 at locations in Missouri specified on the petition. | WAC0721350754 |
| 11B | July 31, 2007 | Askarkhodjaev Abdoollayev | that 17 aliens would be employed for light cleaning duties as housekeepers on a full-time basis by GLS earning a weekly wage of $271.60 at locations in Missouri specified on the petition. | WAC0722851872 |
| 11C | October 1, 2007 | Askarkhodjaev Abdoollayev | that 8 aliens would be employed for light cleaning duties as housekeepers on a full-time basis by GLS earning a weekly wage of $271.60 at locations in Missouri specified on the petition. | WAC0800150873 |
| 11D | April 3, 2008 | Askarkhodjaev | that 46 aliens would be employed for light cleaning duties as housekeepers on a full-time basis by GLS earning a weekly wage of $279.20; at locations in Kansas specified on the petition; that the company has 285 employees and an Annual Gross Income of $1,434,347.38 and Net Annual Income was $125,414.11 | WAC0812950672 |
| 11E | April 21, 2008 | Askarkhodjaev | that 15 aliens would be employed for light cleaning duties as housekeepers on a full-time basis by GLS earning a weekly wage of $279.20; at locations in Kansas specified on the petition; that the company has 285 employees and an Annual Gross Income of $1,434,347.38 and Net Annual Income was $125,414.11 | WAC0814354439 |
| 11F | April 30, 2008 | Askarkhodjaev | that 43 aliens would be employed for light cleaning duties as housekeepers on a full-time basis by GLS earning a weekly wage of $279.20; at locations in Missouri specified on the petition; that the company has 285 employees and an Annual Gross Income of $1,434,347.38 and Net Annual Income was $125,414.11 | WAC0815053825 |
| 11G | May 2, 2008 | Askarkhodjaev | that 38 aliens would be employed for light cleaning duties as housekeepers on a full-time basis by GLS earning a weekly wage of $279.20; at locations in Missouri specified on the petition; that the company has 285 employees and an Annual Gross Income of $1,434,347.38 and Net Annual Income was $125,414.11 | WAC0815250361 |
| 11H | May 28, 2008 | Askarkhodjaev | that 9 aliens would be employed for light cleaning duties as housekeepers on a full-time basis by GLS earning a weekly wage of $279.20; at locations in Kansas specified on the petition; that the company has 285 employees and an Annual Gross Income of $1,434,347.38 and Net Annual Income was $125,414.11 | WAC0816951178 |
| 11I | May 29, 2008 | Yunusov | that 133 aliens would be employed for light cleaning duties as housekeepers on a full-time basis by Crystal earning a weekly wage of $279.20; at locations in Missouri specified on the petition; that the company has 270 employees and an Annual Gross Income of $1,434,347.38 and Net Annual Income was $125,414.11 | WAC0817052296 |
| 11J | June 17, 2008 | Askarkhodjaev | that 12 aliens would be employed for light cleaning duties as housekeepers on a full-time basis by GLS earning a weekly wage of $279.20; at locations in Kansas specified on the petition; that the company has 285 employees and an Annual Gross Income of $1,434,347.38 and Net Annual Income was $125,414.11 | WAC0818351452 |
| 11K | June 23, 2008 | Yunusov | that 37 aliens would be employed for light cleaning duties as housekeepers on a full-time basis by Crystal earning a weekly wage of $338.80; at locations in Massachusetts specified on the petition; that the company has 270 employees and an Annual Gross Income of $1,434,347.38 and Net Annual Income was $125,414.11 | EAC0818650670 |
| 11L | June 30, 2008 | Fazilov | that 82 aliens would be employed for cleaning and maintaining as housekeepers on a full-time basis by Five Star earning a weekly wage of $279.20; at locations in Missouri specified on the petition; that the company has 28 employees and an Annual Gross Income of $1,596,334.48 and Net Annual Income was $126,157.62 | WAC0819250919 |
| 11M | July 1, 2008 | Askarkhodjaev | that 9 aliens would be employed for light cleaning duties as housekeepers on a full-time basis by GLS earning a weekly wage of $279.20; at locations in Kansas specified on the petition; that the company has 285 employees and an Annual Gross Income of $1,434,347.38 and Net Annual Income was $125,414.11 | WAC0819351084 |

| Racketeering Act | Date | Defendants | False Statements by Defendant | Petition Number |
|---|---|---|---|---|
| 11N | July 1, 2008 | Yunusov | that 129 aliens would be employed for light cleaning duties as housekeepers on a full-time basis by Crystal earning a weekly wage of $279.20; at locations in Kansas specified on the petition; that the company has 270 employees and an Annual Gross Income of $1,434,347.38 and Net Annual Income was $125,414.11 | WAC0819350844 |
| 11O | July 28, 2008 | Askarkhodjaev | that 56 aliens would be employed for light cleaning duties as housekeepers on a full-time basis by GLS earning a weekly wage of $279.20; at locations in Kansas specified on the petition; that the company has 285 employees and an Annual Gross Income was $1,434,347.38 and Net Annual Income was $125,414.11 | WAC0821551869 |
| 11P | August 8, 2008 | Askarkhodjaev | that 12 aliens would be employed for light cleaning duties as housekeepers on a full-time basis by GLS earning a weekly wage of $279.20; at locations in Kansas specified on the petition; that the company has 285 employees and an Annual Gross Income of $1,434,347.38 and Net Annual Income was $125,414.11 | WAC0822051546 |
| 11Q | August 25, 2008 | Askarkhodjaev | that 16 aliens would be employed for light cleaning duties as housekeepers on a full-time basis by GLS earning a weekly wage of $279.20; at locations in Missouri specified on the petition; that the company has 285 employees and an Annual Gross Income of $1,434,347.38 and Net Annual Income was $125,414.11 | WAC0823150780 |
| 11R | September 10, 2008 | Yunusov | that 6 aliens would employed for light cleaning duties as housekeepers on a full-time basis by Crystal earning a weekly wage of $279.20; at locations in Missouri specified on the petition; that the company has 270 employees and an Annual Gross Income of $1,434,347.38 and Net Annual Income was $125,414.11 | WAC0824251779 |
| 11S | September 22, 2008 | Askarkhodjaev | that 21 aliens would be employed for light cleaning duties as housekeepers on a full-time basis by GLS earning a weekly wage of $279.20; at locations in Kansas specified on the petition; that the company has 285 employees and an Annual Gross Income of $1,434,347.38 and Net Annual Income was $125,414.11 | WAC0825051082 |
| 11T | October 7, 2008 | Fazilov | that 50 aliens would be employed for light housekeeping duties as housekeepers on a full-time basis by Five Star earning a weekly wage of $279.20; at locations in Missouri specified on the petition; that the company has 92 employees and an Annual Gross Income of $1,596,334.48 and Net Annual Income was $126,157.62 | WAC0900551392 |
| 11U | December 1, 2008 | Yunusov | that 37 aliens would be employed for light cleaning duties as housekeepers on a full-time basis by Crystal earning a weekly wage of $338.80; at locations in Massachusetts specified on the petition; that the company has 270 employees and an Annual Gross Income of $1,434,347.38 and Net Annual Income was $125,414.11 | EAC0904550948 |
| 11V | December 3, 2008 | Askarkhodjaev | that 87 aliens would be employed for light cleaning duties as housekeepers on a full-time basis by GLS earning a weekly wage of $308.40; at locations in Missouri specified on the petition; that the company has 285 employees and an Annual Gross Income of $1,434,347.38 and Net Annual Income was $125,414.11 | WAC0904350833 |
| 11W | December 3, 2008 | Askarkhodjaev | that 78 aliens would be employed for light cleaning duties as housekeepers on a full-time basis by GLS earning a weekly wage of $308.40; at locations in Kansas specified on the petition; that the company has 285 employees and an Annual Gross Income of $1,434,347.38 and Net Annual Income was $125,414.11 | WAC0904350800 |
| 11X | January 15, 2009 | Yunusov | that 1 alien would be employed for light cleaning duties as housekeepers on a full-time basis by Crystal earning a weekly wage of $320.00; at locations in Missouri specified on the petition; that the company has 270 employees and an Annual Gross Income of $1,434,347.38 and Net Annual Income was $125,414.11 | WAC0907150432 |

| Racketeering Act | Date | Defendants | False Statements by Defendant | Petition Number |
|---|---|---|---|---|
| 11Y | August 29, 2008 | Abdoollayev | that 9 aliens would be employed for light cleaning duties as housekeepers on a full-time basis by Laborfix International LLC LLC earning a weekly wage of $279.20; at locations in Missouri specified on the petition; that the company has 9 employees and an Annual Gross Income of $1,744,737.41 and Net Annual Income was $132,605.31 | EAC0823451389 |

In violation of 18 U.S.C. §§ 1546(a) and 2.

**Racketeering Act Twelve**
**(Harboring Illegal Aliens)**

(82) Beginning on or about December 1, 2007, and continuing through on or about February 29, 2008, in the Western District of Missouri and elsewhere, ABRORKHODJA ASKARKHODJAEV and ILKHAM FAZILOV, defendants herein, aiding and abetting each other and others, and in conjunction with Five Star Cleaning, LLC, knowingly and in reckless disregard of the fact that an alien, namely, one of the persons below listed, had come to, entered and remained in the United States in violation of law, concealed, harbored and shielded from detection such alien in buildings and other places for the purpose of commercial advantage and private financial gain:

| ALIEN LAST NAME | FIRST NAME |
|---|---|
| Abdolhossein | Afshari |
| Alarcon | Fernando |
| Alarcon | Manuel |
| Alimova | Dano |
| Coto | Alberto Salazar |
| Diemke | Mateusz |
| Francois | Vesnel |
| Gonzalez | Delfina (Delfino) |
| Hernandez | Jacinta |
| Imanalievoi | Ialgonai |
| Karnakbayeva | Malika |
| Kayumova | Orzu |
| Kuliyeva | Rejepgul |
| Lutska | Olga |
| Mendez | Arturo Castrejon |
| Musanu | Freud |
| Perez | Silvia |
| Pinto | Ana |

| ALIEN LAST NAME | FIRST NAME |
|---|---|
| Recinos | Gladis |
| Rezreihov | Arkadiy |
| Sarenao | Davor |
| Tejada | Norma |
| Tolgonai | Imanalieva |
| Zamorron | Nicolasa |

In violation of 8 U.S.C. § 1324(a)(1)(A)(iii) and 18 U.S.C. § 2.

**Racketeering Act Thirteen**

(83) The defendants named below committed the following acts, any of which alone constitutes the commission of Racketeering Act Thirteen.

**Racketeering Act Thirteen A**
**(Hobbs Act Extortion)**

(84) Beginning on or about between December 1, 2007, and continuing through on or about January 2, 2008, in the Western District of Missouri and elsewhere, ABRORKHODJA ASKARKHODJAEV, RUSTAMJON SHUKUROV, and NODIR YUNUSOV, defendants herein, aiding and abetting each other and others, knowingly obstructed, delayed, affected and attempted to obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, by extortion, as those terms are defined in 18 U.S.C. § 1951, that is, said defendants obtained and attempted to obtain the property of defendant Kakhkharov with his consent induced by the wrongful use of force, violence and fear.

In violation of 18 U.S.C. §§ 1951(a) and 2.

**Racketeering Act Thirteen B**
**(Interstate Travel in Aid of Racketeering)**

(85) Beginning on or about January 1, 2008, and continuing through on or about January 2, 2008, in the Western District of Missouri and elsewhere, ABRORKHODJA ASKARKHODJAEV, RUSTAMJON SHUKUROV, and NODIR YUNUSOV, defendants herein,

aiding and abetting each other and others, traveled in interstate commerce from the state of Missouri to the state of Kansas, with the intent to commit a crime of violence to further an unlawful activity, that is, extortion, contrary to the provisions of 18 U.S.C. § 1951(a), and thereafter committed and attempted to commit the crime of violence to further such unlawful activity.

In violation of 18 U.S.C. §§ 1952(a)(2) and 2.

**Racketeering Act Fourteen**
**(Wire Fraud)**

(86) The defendants named below committed the following acts, any of one of which alone constitutes the commission of Racketeering Act Fourteen.

(87) On or about the dates listed below, ABRORKHODJA ASKARKHODJAEV, NODIR YUNUSOV, RUSTAMJON SHUKUROV, and KRISTIN DOUGHERTY, defendants herein, in the Western District of Missouri and elsewhere, having devised a scheme or artifice to defraud and for the purpose of executing the aforementioned scheme to fraudulently obtain labor leasing contracts, as described in paragraphs one through fifty-nine of this indictment, by means of material false and fraudulent representations and pretenses, knowingly caused to be transmitted by wire communications in interstate commerce certain writings, e-mails, signs, signals and sounds, as described below:

| Racketeering Act | Date | Defendant | Description of Wire Communication |
|---|---|---|---|
| 14A | March 5, 2008 | Shukurov | E-mail re: hotel accounts receivables for Five Star Cleaning, LLC and GLS to Abror from Kansas City, MO through Yahoo, Inc. outside the state of Missouri |

| Racketeering Act | Date | Defendant | Description of Wire Communication |
|---|---|---|---|
| 14B | March 14, 2008 | Shukurov | E-mail re: the distribution and sale of H-2B visa extensions and job opportunities offered to foreign nationals by the Enterprise in Florida, South Carolina, Missouri, Louisiana, Alabama, Kansas and New Jersey, sent from Kansas City, MO through Yahoo, Inc. outside the state of Missouri |
| 14C | March 20, 2008 | Askarkhodjaev | E-mail re: the legality of employing unauthorized H-2B workers outside of the petitioned geographical area from Kansas City, MO through Yahoo, Inc. outside the state of Missouri |
| 14D | March 27, 2008 | Yunusov | E-mail re: address for Crystal Management, Inc. provided to Abror in Kansas City, MO through Yahoo, Inc. outside the state of Missouri |
| 14E | April 22, 2008 | Askarkhodjaev | E-mail re: Abror's co-ownership and common payroll with Crystal Management, Inc. and Giant Labor Solutions, Inc. and Abror's inflated request for H-2B visa workers sent to Hilton Hotels, Inc. from Kansas City, Missouri through Yahoo, Inc. outside the state of Missouri |
| 14F | June 18, 2008 | Yunusov | E-mail re: the availability of foreign nationals to find unauthorized employment and receive H-2B visa extensions sent from Kansas City, MO through Yahoo, Inc. outside the state of Missouri |
| 14G | June 21, 2008 | Yunusov | E-mail re: the increased cost of $1,000 for the extension of an unauthorized H-2B visa sent from Kansas City, MO via Yahoo, Inc. outside the state of Missouri |
| 14H | August 8, 2008 | Yunusov | E-mail re: employment of housekeepers, housemen, laundry and lobby attendants, servers, bussers, and front office clerks by GLS in Houston, TX, New Orleans, LA, Kansas City, MO, Myrtle Beach, SC, Panama City, FL and Sedona, AZ from Kansas City, MO via Yahoo, Inc. outside the state of Missouri |
| 14I | July 2, 2008 | Dougherty | E-mail re: the fulfillment of labor leasing contracts in Panama City, Fl and Arizona from St. Louis, MO through Yahoo, Inc. outside the state of Missouri |
| 14J | July 7, 2008 | Dougherty | E-mail Re: the housing of foreign nationals used to fulfill labor leasing contracts from St. Louis, MO through Yahoo, Inc., outside the state of Missouri |

| Racketeering Act | Date | Defendant | Description of Wire Communication |
|---|---|---|---|
| 14K | July 30, 2008 | Yunusov | E-mail re: the option of foreign nationals remaining with the current employer or obtaining an unauthorized position with a non-H-2B petitioned company sent from Kansas City, MO through Yahoo, Inc. outside the state of Missouri |
| 14L | August 14, 2008 | Yunusov | E-mail re: payment for the extension of H-2B visas sent from Kansas City, Missouri through Yahoo, Inc. outside the state of Missouri |
| 14M | August 27, 2008 | Shukurov | E-mail re: database of clients for United Management, LLC to Nodir Yunusov from Kansas City, MO through Yahoo, Inc.outside the state of Missouri |
| 14N | August 28, 2008 | Yunusov | E-mail re: work in an unauthorized H-2B position sent from Kansas City, MO through Yahoo, Inc. outside the state of Missouri |
| 14O | September 2, 2008 | Shukurov | E-mail re: search terms for web sites maintained by the Enterprise to Abror from Kansas City, MO through Yahoo, Inc. outside the state of Missouri |
| 14P | September 7, 2008 | Yunusov | E-mail re: hotel references, a proposed Labor Services Agreement and the obligation of GLS to provide worker's compensation, insurance and unemployment benefits, and to deduct all payroll related taxes to Yosemite Management Group in California from Kansas City, MO |
| 14Q | September 12, 2008 | Yunusov | E-mail re: employment opportunities of GLS at Atlantic City, NJ and Casper, WY sent from Kansas City, MO through Yahoo, Inc. outside the state of Missouri |
| 14R | September 12, 2008 | Yunusov | E-mail re: the ability to find employment for foreign nationals throughout the United States and the option for H-2B visa holders to hold second jobs sent from Kansas City, Missouri through Yahoo, Inc. outside the state of Missouri |
| 14S | September 14, 2008 | Yunusov | E-mail re: the affiliation of Crystal Management, Inc. to Giant Labor Solutions LLC and the request of an inflated requirement for housekeeping jobs sent from Kansas City, MO through Yahoo, Inc. outside the state of Missouri |
| 14T | September 20, 2008 | Yunusov | E-mail re: biographical/employment information including the H-2B visa expiration dates for 241 employees to Rustamjon Shukurov in Kansas City, MO through Yahoo, Inc. outside the state of Missouri |

| Racketeering Act | Date | Defendant | Description of Wire Communication |
|---|---|---|---|
| 14U | September 22, 2008 | Yunusov | E-mail re: the collection of application fees and the recruitment of 249 Filipino workers sent from Kansas City, MO through Yahoo, Inc. outside the state of Missouri |
| 14V | September 23, 2008 | Yunusov | E-mail re: sales related documents including GLS services information to Viorel Simon from Kansas City, MO through Yahoo, Inc. outside the state of Missouri |

In violation 18 U.S.C. § 1343.

**Racketeering Act Fifteen**
**(Inducing Illegal Entry)**

(88) On or about February 23, 2009, in the Western District of Missouri, NODIR YUNUSOV, RUSTAMJON SHUKUROV, VIOREL SIMON and ANDREW COLE, defendants herein, aiding and abetting each other and others, and in conjunction with Crystal Management, Inc., encouraged and induced an alien, namely one of the persons below listed, to come to, enter and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry, and residence in the United States was in violation of law, for the purposes of commercial advantage and private financial gain:

| Last Name | First Name |
|---|---|
| Perdomo Garcia | Juan Carlos |
| Jimenez De La Cruz | Alex |
| Vicente Reynoso | Celis Daniel |
| Sanchez Puello | Elvira |
| Montero Montero | Fausto |
| Luciano Rodriguez | Blanca Adriana |
| Gomez Urena | Henrry |
| Vargas Rodriguez | Jose Luis |
| Garcia Garcia | Norma Yris |
| Martinez De Jesus De Garcia | Carmen |
| Jimenez Paulino | Clemente Carlixto |
| De Jesus Garcia | Patria |
| De La Rosa Ortiz | Mary |
| Paradis Cruz | Reynaldo |
| Jimenez Paulino | Pedro Awrincula |

| Last Name | First Name |
|---|---|
| Vasquez Rodriguez | Francisco |
| Arthur Valera | Ruben Nelson |
| Leonardo De Garcia | Johanna |

In violation of 8 U.S.C. § 1324(a)(1)(A)(iv)(B)(i) and 18 U.S.C. § 2.

**Racketeering Act Sixteen**
**(Inducing Illegal Entry)**

(89) On or about July 11, 2008, in the Western District of Missouri, ABRORKHODJA ASKARKHODJAEV, NODIR YUNUSOV, and KRISTIN DOUGHERTY, defendants herein, aiding and abetting each other and others, and in conjunction with Giant Labor Solutions, LLC, and Anchor Building Services, Inc., encouraged and induced an alien, namely, Alp Aktog, to come to, enter and reside in the United States, knowingly and in reckless disregard of the fact that such coming to, entry, and residence in the United States was in violation of law, for the purpose of commercial advantage and private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv) and 18 U.S.C. § 2.

All in violation of 18 U.S.C. §§ 1962(c), 1963(a), and 2.

**COUNT TWO**
**(RICO CONSPIRACY)**

(90) Paragraphs One through Fifty-Nine in Count One are incorporated by reference as if fully set forth herein.

(91) From on or about January 2001, continuing through May, 2009, both dates being approximate, in the Western District of Missouri and elsewhere,

Abrorkhodja Askarkhodjaev,

Nodir Yunusov,

Rustamjon Shukurov,

Kristin Dougherty,

Ilkham Fazilov,

Viorel Simon,

Nodirbek N. Abdoollayev,

Andrew Cole,

Sandjar Agzamov,

and

Jakhongir Kakhkharov,

defendants herein, together with persons both known and unknown to the Grand Jury, being persons employed by and associated with the Criminal Enterprise, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce, knowingly, and intentionally conspired to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined in 18 U.S.C. § 1961(1) and 1961(5), consisting of multiple acts indictable under the following provisions of federal law:

A. 18 U.S.C. § 1589(a) (Forced Labor Trafficking)

B. 18 U.S.C. § 1028(a)(7) (Identity Theft)

C. 8 U.S.C. § 1324(a)(1)(A)(iii)(Harboring Illegal Aliens)

D. 18 U.S.C. § 1341 (Mail Fraud)

E. 18 U.S.C. § 1343 (Wire Fraud)

F. 18 U.S.C. § 1957(a) (Money Laundering Financial Transactions in Excess of $10,000)

G. 18 U.S.C. § 1956(a)(1)A)(i) (Promotion of Unlawful Money Laundering)

H. 18 U.S.C. § 1956(a)(1)(B)(i) (Money Laundering Concealment of Proceeds)

I. 18 U.S.C. § 1956(h) (Money Laundering Conspiracy)

J. 18 U.S.C. § 1546(a) (Visa Fraud)

K. 18 U.S.C. § 1951 (Hobbs Act Extortion)

L. 18 U.S.C. § 1952 (Travel Act Racketeering)

M. 8 U.S.C. § 1324 (a)(1)(A)(iv) (Inducing Illegal Alien Entry)

N. 8 U.S.C. § 1324 (a)(1)(A)(ii) (Transportation of Illegal Aliens)

(92) It was a further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

**OVERT ACTS**

(93) In furtherance of the conspiracy and to effect the objects thereof, one or more of the defendants committed and caused to be committed the following overt acts in the Western District of Missouri and elsewhere.

(94) On or about March 14, 2005 Giant Labor Solutions, LLC entered into an agreement to provide labor services in conjunction with defendant ASKARKHODJAEV to have the Hotel Phillips Kansas City provide various services including housekeeping, front desk work, floor care and landscaping.

(95) On or about May 15, 2005 defendant ASKARKHODJAEV caused Giant Labor Solutions, LLC to obtain a Certificate of Liability Insurance regarding workers' compensation and employer's liability and general liability concerning workers at the Point Royal Condominium and Golf Resort in Branson, MO through the American Family Insurance Company.

(96) On or about June 1, 2005 defendant ABDOOLLAYEV caused Point Royal Properties, Inc. to fax a signed copy of a Labor Leasing Agreement between Giant Labor Solutions, LLC and Point Royal Properties, Inc.

(97) On or about July 26, 2005 defendant ASKARKHODJAEV caused check #114785 from Pointe Royale Properties to be issued in the amount of $2,020.99, which amount was based on the work performed by foreign national workers.

(98) On or about July 28, 2005 defendant ASKARKHODJAEV caused check #92111 from the Hilton-Embassy Suites Hotel to be issued in the amount of $10,483.24, which amount was based on the work performed by foreign national workers.

(99) On or about July 28, 2005 defendant ASKARKHODJAEV caused check #88807 from the Hotel Phillips to be issued in the amount of $5,361.00, which amount was based on the work performed by foreign national workers.

(100) On or about August 15, 2005 defendant ASKARKHODJAEV transferred approximately $33,112.84 from Giant Labor Solutions, LLC's Bank of America account to the Bank of America account controlled by KC Janitorial Services, LLC.

(101) On or about August 22, 2005 defendants ASKARKHODJAEV and DOUGHERTY caused defendant AGZAMOV to issue payroll check #2168 from the Bank of America account of KC Janitorial Services, LLC to defendant DOUGHERTY in the amount of $5,137.25.

(102) On or about October 7, 2005 defendant ASKARKHODJAEV caused Giant Labor Solutions to obtain a Certificate of Liability Insurance with Allied Group and St. Paul Traveler's Insurance regarding liability insurance and workers' compensation and employer's liability for any and all contract employees located at the Hotel Phillips Kansas City.

(103) On or about December 5, 2005 defendant ASKARKHODJAEV caused check #51256 from Westin Crown Center to be issued in the amount of $15,476.18, which amount was based on the work performed by foreign national workers.

(104) On or about December 12, 2005 defendant ASKARKHODJAEV transferred approximately $13,317.68 from Giant Labor Solutions, LLC's Bank of America account to the Bank of America account controlled by KC Janitorial Services, LLC.

(105) On or about December 21, 2005 defendant ASKARKHODJAEV caused check #51525 from Westin Crown Center to be issued in the amount of $11,480.63, which amount was based on the work performed by foreign national workers.

(106) On or about December 21, 2005 defendant ASKARKHODJAEV caused check #6127 from Hilton Doubletree Hotel to be issued in the amount of $731.50, which amount was based on the work performed by foreign national workers.

(107) On or about December 21, 2005 defendant ASKARKHODJAEV caused check #105988 from Hilton-Embassy Suites to be issued in the amount of $3,082.75, which amount was based on the work performed by foreign national workers.

(108) On or about December 22, 2005 defendant ASKARKHODJAEV caused check #100174 from Hotel Phillips to be issued in the amount of $9,498.00, which amount was based on the work performed by foreign national workers.

(109) On or about December 22, 2005 defendant ASKARKHODJAEV caused check #6150 from Hilton Doubletree Hotel to be issued in the amount of $8,331.50, which amount was based on the work performed by foreign national workers.

(110) On or about December 30, 2005 defendant ASKARKHODJAEV transferred approximately $41,171.01 from Giant Labor Solutions, LLC's Bank of America account to the Bank of America account controlled by KC Janitorial Services, LLC.

(111) On or about April 26, 2006 defendant ASKARKHODJAEV caused check #53278 from Westin Crown Center to be issued in the amount of $7,553.82, which amount was based on the work performed by foreign national workers.

(112) On or about May 1, 2006 defendant ASKARKHODJAEV caused check #7541 from Hilton Doubletree Hotel to be issued in the amount of $7,205.25, which amount was based on the work performed by foreign national workers.

(113) On or about May 3, 2006 defendant ASKARKHODJAEV caused check #53391 from Westin Crown Center to be issued in the amount of $20,395.99, which amount was based on the work performed by foreign national workers.

(114) On or about May 10, 2006 defendant ASKARKHODJAEV transferred approximately $18,979.96 from Giant Labor Solutions, LLC's Bank of America account to the Bank of America account controlled by KC Janitorial Services, LLC.

(115) On or about June 1, 2006 defendant ASKARKHODJAEV caused check #53821 from Westin Crown Center to be issued in the amount of $13,474.01, which amount was based on the work performed by foreign national workers.

(116) On or about June 1, 2006 defendant ASKARKHODJAEV caused check #53706 from Westin Crown Center to be issued in the amount of $27,194.71, which amount was based on the work performed by foreign national workers.

(117) On or about June 5, 2006 Giant Labor Solutions, LLC entered into an agreement to provide labor services through defendant ASKARKHODJAEV with the Sheraton Suites Country Club Plaza regarding housekeeping, front desk work, floor care and landscaping.

(118) On or about June 19, 2006 defendant ASKARKHODJAEV transferred approximately $39,979.75 from Giant Labor Solutons, LLC's Bank of America account to the Bank of America account controlled by KC Janitorial Services, LLC.

(119) On or about July 12, 2006 defendant ASKARKHODJAEV caused check #54359 from Westin Crown Center to be issued in the amount of $28,362.76, which amount was based on the work performed by foreign national workers.

(120) On or about July 18, 2006 Giant Labor Solutions, LLC entered into an agreement to provide labor services in conjunction with defendant ASKARKHODJAEV with Hotel Phillips Kansas City regarding labor for various duties including housekeeping, houseman, turn down service, room service attendant and public areas and maintenance work.

(121) On or about July 31, 2006 defendant ASKARKHODJAEV transferred approximately $43,161.66 from Giant Labor Solutions, LLC's Bank of America account to the Bank of America account controlled by KC Janitorial Services, LLC.

(122) On or about August 2, 2006 defendant ASKARKHODJAEV caused check #8567 from Hilton Doubletree Hotel to be issued in the amount of $13,479.43, which amount was based on the work performed by foreign national workers.

(123) On or about August 3, 2006 defendant ASKARKHODJAEV caused check #118142 from Hotel Phillips to be issued in the amount of $14,609.67, which amount was based on the work performed by foreign national workers.

(124) On or about August 14, 2006 defendant ASKARKHODJAEV transferred approximately $50,576.58 from Giant Labor Solutions, LLC's Bank of America account to the Bank of America account controlled by KC Janitorial Services, LLC.

(125) On or about August 23, 2006 defendant ASKARKHODJAEV caused check #55006 from Westin Crown Center to be issued in the amount of $57,476.28, which amount was based on the work performed by foreign national workers.

(126) On or about August 24, 2006 defendant ASKARKHODJAEV deposited $57,476.28 into his Bank of America account number 3462566680.

(127) On or about August 21, 2006 defendant ASKARKHODJAEV deposited into GLS account number 348256680 check number 126576 from Hilton in the amount of $12,000.88.

(128) On or about August 28, 2006 defendant ASKARKHODJAEV caused defendant AGZAMOV to transfer $89,946.41 from the Bank of America account controlled by defendant ASKARKHODJAEV to account number 7010 in the name of KC Janitorial Services, LLC.

(129) On or about August 30, 2006 defendant ASKARKHODJAEV caused check #55101 from Westin Crown Center to be issued in the amount of $32,699.58, which amount was based on the work performed by foreign national workers.

(130) On or about September 22, 2006 defendant ASKARKHODJAEV caused check #7409 from Branson Creek Golf Club to be issued in the amount of $2,055.10, which amount was based on the work performed by foreign national workers.

(131) On or about September 25, 2006 defendant ASKARKHODJAEV transferred approximately $50,211.51 from Giant Labor Solutions LLC's Bank of America account to the Bank of America account controlled by KC Janitorial Services, LLC.

(132) On or about September 27, 2006 defendant ASKARKHODJAEV caused check #55458 from Westin Crown Center to be issued in the amount of $50,758.52, which amount was based on the work performed by foreign national workers.

(133) On or about October 6, 2006 defendant ASKARKHODJAEV transferred approximately $50,071.63 from Giant Labor Solutions, LLC's Bank of America account to the Bank of America account controlled by KC Janitorial Services, LLC.

(134) On or about November 3, 2006 defendant ASKARKHODJAEV caused check #9499 from Doubletree Hotel to be issued in the amount of $26,992.96, which amount was based on the work performed by foreign national workers.

(135) On or about November 14, 2006 defendant ASKARKHODJAEV caused check #7526 from Branson Creek Golf Club to be issued in the amount of $1,077.50, which amount was based on the work performed by foreign national workers.

(136) On or about November 17, 2006 defendant ASKARKHODJAEV transferred approximately $41,250.00 from Giant Labor Solutions, LLC's Bank of America account to the Bank of America account controlled by KC Janitorial Services, LLC.

(137) On or about November 17, 2006 defendant ASKARKHODJAEV caused check #9656 from Hilton Doubletree Hotel to be issued in the amount of $5,842.74, which amount was based on the work performed by foreign national workers.

(138) On or about November 21, 2006 defendant ASKARKHODJAEV caused check #134927 from Hilton-Embassy Suites Hotel to be issued in the amount of $7,830.38, which amount was based on the work performed by foreign national workers.

(139) On or about December 6, 2006 defendant ASKARKHODJAEV caused check #56634 from Westin Crown Center to be issued in the amount of $42,154.14, which amount was based on the work performed by foreign national workers.

(140) On or about January 5, 2007 defendant ASKARKHODJAEV in conjunction with Giant Labor Solutions, LLC submitted to the Department of Labor an application for Alien Employment Certification form ETA 750 requesting 200 foreign national workers.

(141) On or about February 14, 2007 defendant ASKARKHODJAEV caused check #57572 from Westin Crown Center to be issued in the amount of $13,055.28, which amount was based on the work performed by foreign national workers.

(142) On or about February 15, 2007 defendant ASKARKHODJAEV caused check #23911 from Sheraton-Overland Park to be issued in the amount of $4,161.31, which amount was based on the work performed by foreign national workers.

(143) On or about March 9, 2007 defendants AGZAMOV and AZIZKHODJAEV caused KC Janitorial Services, LLC to issue check #1303 to defendant AZIZKHODJAEV in the amount of $2,856.00.

(144) On or about April 18, 2007 defendant ASKARKHODJAEV caused check #58503 from Westin Crown Center to be issued in the amount of $23,912.88, which amount was based on the work performed by foreign national workers.

(145) On or about April 25, 2007 defendant ASKARKHODJAEV caused check #147314 from Hilton-Embassy Suites Hotel to be issued in the amount of $6,336.19, which amount was based on the work performed by foreign national workers.

(146) On or about April 27, 2007 defendant ASKARKHODJAEV caused check #143033 from Hotel Phillips to be issued in the amount of $2,540.00, which amount was based on the work performed by foreign national workers.

(147) On or about May 4, 2007 defendant ASKARKHODJAEV wire transferred approximately $30,430.58 from his Bank of America account to the Mazuma Credit Union account controlled by KC Janitorial Services, LLC.

(148) On or about May 18, 2007 defendants AGZAMOV and AZIZKHODJAEV caused KC Janitorial Services, LLC to issue check #1512 to defendant AZIZKHODJAEV in the amount of $2,698.50.

(149) On or about May 23, 2007 defendant ASKARKHODJAEV caused check #59008 from Westin Crown Center to be issued in the amount of $23,009.54, which amount was based on the work performed by foreign national workers.

(150) On or about June 2007 defendant ABDOOLLAYEV offered a foreign national a position with Giant Labor Solutions, LLC working as a housekeeper and food server for a hotel in Kansas City, Missouri.

(151) On or about June 2007 defendant ABDOOLLAYEV arranged for a foreign national to e-mail a copy of her passport, her I-94 document and two pay stubs from the Westin hotel for the purpose of extending her H-2B visa.

(152) On or about June 1, 2007 defendant ASKARKHODJAEV wire transferred approximately $32,362.67 from Giant Labor Solutions, LLC's Bank of America account to the Mazuma Credit Union account controlled by KC Janitorial Services, LLC.

(153) On or about June 6, 2007 defendant ASKARKHODJAEV caused check #59248 from Westin Crown Center to be issued in the amount of $21,377.48, which amount was based on the work performed by foreign national workers.

(154) On or about June 13, 2007 defendant ASKARKHODJAEV caused check #59441 from Westin Crown Center to be issued in the amount of $10,515.38, which amount was based on the work performed by foreign national workers.

(155) On or about June 13, 2007 defendant ASKARKHODJAEV caused check #1105 from Hilton Doubletree Hotel to be issued in the amount of $10,047.42, which amount was based on the work performed by foreign national workers.

(156) On or about June 15, 2007 defendant ASKARKHODJAEV caused check #600818 from Union Station Restaurant Groups to be issued in the amount of $2,771.16, which amount was based on the work performed by foreign national workers.

(157) On or about June 19, 2007 defendant ASKARKHODJAEV executed check #1204 in the amount of $27,201.23 from the Bank of America account held by Giant Labor Solutions, LLC payable to the KC Janitorial Services, LLC account at the Mazuma Credit Union.

(158) On or about June 19, 2007 defendant ASKARKHODJAEV deposited $44,906.44 into his Bank of America account number 3462566680.

(159) On or about June 20, 2007 defendant ASKARKHODJAEV caused check #59554 from Westin Crown Center to be issued in the amount of $13,568.60, which amount was based on the work performed by foreign national workers.

(160) On or about June 27, 2007 defendant ASKARKHODJAEV caused check #59651 from Westin Crown Center to be issued in the amount of $11,984.22, which amount was based on the work performed by foreign national workers.

(161) On or about June 28, 2007 defendant ASKARKHODJAEV caused check #152749 from Hilton-Embassy Suites to be issued in the amount of $4,277.39, which amount was based on the work performed by foreign national workers.

(162) On or about June 28, 2007 defendant ASKARKHODJAEV caused check #148841 from Hotel Phillips to be issued in the amount of $940.00, which amount was based on the work performed by foreign national workers.

(163) On or about July 11, 2007 defendant ASKARKHODJAEV caused check #59853 from Westin Crown Center to be issued in the amount of $26,228.89, which amount was based on the work performed by foreign national workers.

(164) On or about July 12, 2007 defendants ASKARKHODJAEV and ABDOOLLAYEV submitted INS form I-129 Petition for Nonimmigrant Workers to the Citizenship and Immigration Services regarding 33 foreign national workers.

(165) On or about July 16, 2007 defendant ABDOOLLAYEV caused an e-mail to be sent to the Director of Finance at the Doubletree Hotel, Overland Park, KS regarding termination and/or recruitment of any foreign national workers associated with Giant Labor Solutions, LLC.

(166) On or about July 16, 2007 Giant Labor Solutions, LLC through defendant ASKARKHODJAEV entered into a services agreement with the Doubletree Hotel at Corporate Woods, KS regarding housekeeping services, floor technicians and dishwashers provided to the Doubletree Hotel by Giant Labor Solutions, LLC.

(167) On or about July 18, 2007 defendant ASKARKHODJAEV caused check #7221 from High Side Adventure Tours to be issued in the amount of $2,812.50, which amount was based on the work performed by foreign national workers.

(168) On or about July 18, 2007 defendant ASKARKHODJAEV caused check #60179 from Westin Crown Center to be issued in the amount of $906.75, which amount was based on the work performed by foreign national workers.

(169) On or about July 19, 2007 defendant ASKARKHODJAEV caused check #64569 from Kato Roofing to be issued in the amount of $2,040.00, which amount was based on the work performed by foreign national workers.

(170) On or about July 20, 2007 defendant ASKARKHODJAEV caused check #150853 from Hotel Phillips to be issued in the amount of $1,870.00, which amount was based on the work performed by foreign national workers.

(171) On or about July 20, 2007 defendant ASKARKHODJAEV caused check #4551378 from Marriott Convention Center to be issued in the amount of $768.00, which amount was based on the work performed by foreign national workers.

(172) On or about July 23, 2007 defendant ASKARKHODJAEV caused check #125 from Sheraton-Plaza to be issued in the amount of $7,683.04, which amount was based on the work performed by foreign national workers.

(173) On or about July 25, 2007 defendant ASKARKHODJAEV caused check #1446 from Hilton-Doubletree Hotel to be issued in the amount of $15,973.07, which amount was based on the work performed by foreign national workers.

(174) On or about July 26, 2007 defendant ASKARKHODJAEV caused check #151388 from Hotel Phillips to be issued in the amount of $930.00, which amount was based on the work performed by foreign national workers.

(175) On or about July 26, 2007 defendant ASKARKHODJAEV caused check #60277 from Westin Crown Center to be issued in the amount of $21,045.40, which amount was based on the work performed by foreign national workers.

(176) On or about July 26, 2007 defendant ASKARKHODJAEV caused check #64603 from Kato Roofing to be issued in the amount of $2,296.00, which amount was based on the work performed by foreign national workers.

(177) On or about July 27, 2007 defendant ABDOOLLAYEV transported two foreign national workers from Kansas City International Airport to an apartment in Overland Park, KS.

(178) On or about July 31, 2007 defendants ASKARKHODJAEV and ABDOOLLAYEV submitted INS form I-129 Petition for Nonimmigrant Workers to the Citizenship and Immigration Services regarding 17 foreign national workers.

(179) On or about August 2007 defendant ABDOOLLAYEV obtained a position for a foreign national with Giant Labor Solutions, LLC as a housekeeper with the Marriott Hotel in Kansas City, MO.

(180) On or about August 7, 2007 defendant ASKARKHODJAEV caused check #4591997 from Marriott-Overland Park to be issued in the amount of $1,485.01, which amount was based on the work performed by foreign national workers.

(181) On or about August 8, 2007 defendant ASKARKHODJAEV caused check #60513 from Westin Crown Center to be issued in the amount of $13,901.57, which amount was based on the work performed by foreign national workers.

(182) On or about August 9, 2007 defendant ASKARKHODJAEV caused check #1599 from Hilton-Doubletree Hotel to be issued in the amount of $16,540.92, which amount was based on the work performed by foreign national workers.

(183) On or about August 9, 2007 defendant ASKARKHODJAEV caused check #152636 from Hotel Phillips to be issued in the amount of $300.00, which amount was based on the work performed by foreign national workers.

(184) On or August 9, 2007 defendant ASKARKHODJAEV wire transferred $61,768.63 from the Bank of America account in the name of Giant Labor Solutions, LLC to the Bank of the West account controlled by Midwest Management, Inc.

(185) On or about August 10, 2007 defendant ASKARKHODJAEV caused check #64667 from Kato Roofing to be issued in the amount of $2,904.00, which amount was based on the work performed by foreign national workers.

(186) On or about August 18, 2007 Giant Labor Solutions, LLC through defendant ABDOOLLAYEV entered into a contractual agreement for temporary labor services with the Courtyard by Marriott Overland Park Convention Center regarding light manual labor.

(187) On or about August 29, 2007 defendant ASKARKHODJAEV caused check #60798 from Westin Crown Center to be issued in the amount of $35,366.42, which amount was based on the work performed by foreign national workers.

(188) On or about August 30, 2007 defendant ASKARKHODJAEV caused check #158203 from Hilton-Embassy Suites to be issued in the amount of $2,676.63, which amount was based on the work performed by foreign national workers.

(189) On or about August 30, 2007 defendant ASKARKHODJAEV caused Giant Labor Solutions, LLC to obtain general liability and workers' compensation and employer liability insurance with the Hartford Casualty Insurance Company and the Twin City Fire Insurance regarding employees located at the Sheraton Plaza, Kansas City.

(190) On or about August 30, 2007 defendant ASKARKHODJAEV caused check #154619 from Hotel Phillips to be issued in the amount of $560.00, which amount was based on the work performed by foreign national workers.

(191) On or about August 30, 2007 defendant ASKARKHODJAEV caused check #1793 from Hilton-Doubletree Hotel to be issued in the amount of $275.44, which amount was based on the work performed by foreign national workers.

(192) On or about September 18, 2007 defendant ASKARKHODJAEV caused check #61106 from Hilton Crown Center to be issued in the amount of $50,522.29, which amount was based on the work performed by foreign national workers.

(193) On or about September 18, 2007 defendant ASKARKHODJAEV caused check #61105 from Westin Crown Center to be issued in the amount of $1,750.14, which amount was based on the work performed by foreign national workers.

(194) On or about September 19, 2007 defendant ASKARKHODJAEV deposited $52,272.43 into his Bank of America account number 3462566680.

(195) On or about September 25, 2007 defendant ASKARKHODJAEV wire transferred approximately $63,831.81 from the Bank of America account in the name of Giant Labor Solutions, LLC to the Bank of the West account controlled by Midwest Management, Inc.

(196) On or about October 1, 2007 defendants ASKARKHODJAEV and ABDOOLLAYEV submitted INS form I-129 Petition for Nonimmigrant Workers to the Citizenship and Immigration Services regarding eight foreign national workers.

(197) On or about October 1, 2007 defendant ASKARKHODJAEV caused check #160888 from Hilton-Embassy Suites Hotel to be issued in the amount of $4,894.89, which amount was based on the work performed by foreign national workers.

(198) On or about October 2, 2007 defendant ASKARKHODJAEV caused check #589 from Sheraton-Plaza to be issued in the amount of $1,431.01, which amount was based on the work performed by foreign national workers.

(199) On or about October 3, 2007 defendant ASKARKHODJAEV caused check #61418 from Westin Crown Center to be issued in the amount of $29,783.65, which amount was based on the work performed by foreign national workers.

(200) On or about October 9, 2007 defendant ASKARKHODJAEV caused check #600913 from Union Station Restaurant Group to be issued in the amount of $1,408.60, which amount was based on the work performed by foreign national workers.

(201) On or about October 19, 2007 defendant ASKARKHODJAEV transferred $52,350.00 to the Bank of America account in the name of Giant Labor Solutions, LLC and wire transferred approximately $52,325.00 from the Giant Labor Solutions, LLC Bank of America account to the Bank of the West account controlled by Midwest Management, Inc.

(202) On or about November 15, 2007 defendant ASKARKHODJAEV caused check #62032 from Westin Crown Center to be issued in the amount of $31,399.28, which amount was based on the work performed by foreign national workers.

(203) On or about November 29, 2007 defendant ASKARKHODJAEV in conjunction with Giant Labor Solutions, LLC submitted to the Department of Labor an application for Alien Employment Certification form ETA 750 requesting 110 foreign national workers.

(204) On or about November 29, 2007 defendant ASKARKHODJAEV in conjunction with Giant Labor Solutions, LLC submitted to the Department of Labor an application for Alien Employment Certification form ETA 750 requesting 174 foreign national workers.

(205) On or about November 30, 2007 defendant ASKARKHODJAEV caused defendant KAKHKHAROV to transfer $69,508.63 from the Bank of America account controlled by defendant ASKARKHODJAEV to account number 1640 in the name of Midwest Management, Inc.

(206) On or about December 7, 2007 defendant ASKARKHODJAEV caused check #12132 from Sheraton-Overland Park to be issued in the amount of $1,467.77, which amount was based on the work performed by foreign national workers.

(207) On or about December 10, 2007 defendant ASKARKHODJAEV caused check #62351 from Westin Crown Center to be issued in the amount of $30,400.93, which amount was based on the work performed by foreign national workers.

(208) On or about December 28, 2007 defendant ASKARKHODJAEV wire transferred approximately $28,062.00 from his Bank of America account to Five Star Cleaning, LLC's Bank of the West account.

(209) On or about February 20, 2008 defendant ASKARKHODJAEV caused check #63275 from Westin Crown Center to be issued in the amount of $18,437.26, which amount was based on the work performed by foreign national workers.

(210) On or about March 5, 2008 defendant SHUKUROV caused an e-mail to be sent to defendant ASKARKHODJAEV regarding hotel accounts receivables for Five Star Cleaning, LLC and Giant Labor Solutions, LLC.

(211) On or about March 14, 2008 defendant SHUKUROV caused an e-mail to be sent regarding the distribution and sale of H-2B visa extensions and job opportunities offered to foreign nationals by the Enterprise in Florida, South Carolina, Missouri, Louisiana, Alabama, Kansas and New Jersey.

(212) On or about March 18, 2008 Giant Labor Solutions, LLC caused a fax purchase order to be sent from the Westin Crown Center in Kansas City, MO regarding the payment of labor fees in the amount of $7,692.76.

(213) On or about March 20, 2008 defendant ASKARKHODJAEV caused an e-mail to be sent regarding the legality of employing unauthorized H-2B workers outside of the petitioned geographical area.

(214) On or about March 25, 2008 Giant Labor Solutions, LLC caused a purchase order to be faxed from Crown Center Hotel Complex, Inc. in Kansas City, MO for the payment of labor costs in the amount of $7,238.40.

(215) On or about March 26, 2008 defendant ASKARKHODJAEV caused check #63875 from Westin Crown Center to be issued in the amount of $17,094.89, which amount was based on the work performed by foreign national workers.

(216) On or about March 27, 2008 defendant YUNUSOV caused an e-mail to be sent to defendant ASKARKHODJAEV regarding the address for Crystal Management, Inc.

(217) On or about April 3, 2008 defendant ASKARKHODJAEV submitted INS form I-129 Petition for Nonimmigrant Workers to the Citizenship and Immigration Services regarding 46 foreign national workers.

(218) On or about April 7, 2008 Giant Labor Solutions, LLC caused a purchase order to be faxed from Crown Center Hotel Complex, Inc. in Kansas City, MO regarding labor fees in the amount of $7,800.00.

(219) On or about April 10, 2008 defendant ASKARKHODJAEV caused an e-mail to be sent regarding defendant ASKARKHODJAEV's ownership of both Giant Labor Solutions, LLC and Crystal Management, Inc.

(220) On or about April 21, 2008 defendant ASKARKHODJAEV submitted INS form I-129 Petition for Nonimmigrant Workers to the Citizenship and Immigration Services regarding 15 foreign national workers.

(221) On or about April 22, 2008 defendant ASKARKHODJAEV caused an e-mail to be sent to Hilton Hotels, Inc. regarding ASKARKHODJAEV's co-ownership and common payroll with Crystal Management, Inc., and Giant Labor Solutions, LLC, and his inflated request for H-2B visa workers.

(222) On or about April 28, 2008 defendant FAZILOV caused Five Star Cleaning, LLC to issue payroll check #2300 to defendant FAZILOV in the amount of $21,227.50.

(223) On or about April 29, 2008 defendant YUNUSOV in conjunction with Crystal Management, Inc., submitted to the Department of Labor an application for Alien Employment Certification form ETA 750 requesting 135 foreign national workers.

(224) On or about April 29, 2008 defendant YUNUSOV in conjunction with Crystal Management, Inc., submitted to the Department of Labor an application for Alien Employment Certification form ETA 750 requesting 129 foreign national workers.

(225) On or about April 30, 2008 defendant ASKARKHODJAEV submitted INS form I-129 Petition for Nonimmigrant Workers to the Citizenship and Immigration Services regarding 43 foreign national workers.

(226) On or about May 2, 2008 defendant ASKARKHODJAEV submitted INS form I-129 Petition for Nonimmigrant Workers to the Citizenship and Immigration Services regarding 38 foreign national workers.

(227) On or about May 6, 2008 defendant ASKARKHODJAEV caused check #64273 from Westin Crown Center to be issued in the amount of $17,900.25, which amount was based on the work performed by foreign national workers.

(228) On or about May 12, 2008 defendant YUNUSOV in conjunction with Crystal Management, Inc., submitted to the Department of Labor an application for Alien Employment Certification form ETA 750 requesting 37 foreign national workers.

(229) On or about May 20, 2008 defendant FAZILOV in conjunction with Five Star Cleaning, LLC submitted to the Department of Labor an application for Alien Employment Certification form ETA 750 requesting 87 foreign national workers.

(230) On or about May 28, 2008 defendant ASKARKHODJAEV submitted INS form I-129 Petition for Nonimmigrant Workers to the Citizenship and Immigration Services regarding 9 foreign national workers.

(231) On or about May 29, 2008 defendant YUNUSOV submitted INS form I-129 Petition for Nonimmigrant Workesr to the Citizenship and Immigration Services regarding 133 foreign national workers.

(232) On or about June 2, 2008 defendant YUNUSOV telephonically contacted defendant ASKARKHODJAEV regarding H-2B visa extensions and defendant ASKARKHODJAEV informed defendant YUNUSOV that the I-94 documents had arrived for the 43 foreign national workers previously petitioned.

(233) On or about June 2, 2008 defendant SHUKUROV telephonically contacted defendant ASKARKHODJAEV and informed him that an additional group of foreign national workers were approved following a different application process.

(234) On or about June 5, 2008 defendant ASKARKHODJAEV caused check #64705 from Westin Crown Center to be issued in the amount of $11,416.25, which amount was based on the work performed by foreign national workers.

(235) On or about June 6, 2008 defendant YUNUSOV telephonically contacted defendant ASKARKHODJAEV and informed him that he obtained defendant FAZILOV's signature and that all related items have been sent.

(236) On or about June 8, 2008 defendant YUNUSOV telephonically contacted defendant ASKARKHODJAEV to inform him that the Ritz Carton in New Orleans wished to retain the foreign national Turkish workers whose visas were changed by the Enterprise.

(237) On or about June 10, 2008 defendant ASKARKHODJAEV caused defendant FAZILOV to transfer $71,319.00 from the Bank of America account controlled by defendant ASKARKHODJAEV to account number 4776 in the name of Five Star Cleaning, LLC at Bank of the West.

(238) On or about June 10, 2008 defendant ASKARKHODJAEV deposited into GLS account number 354001575905 check number 64705 from Westin in the amount of $11,416.25.

(239) On or about June 18, 2008 defendant YUNUSOV caused an e-mail to be sent regarding the availability of foreign nationals to find unauthorized employment and receive H-2B visa extensions.

(240) On or about June 21, 2008 defendant YUNUSOV caused an e-mail to be sent regarding the increased cost of $1,000 for the extension of an unauthorized H-2B visa.

(241) On or about August 8, 2008 defendant YUNUSOV caused an e-mail to be sent regarding employment of housekeepers, housemen, laundry and lobby attendants, servers, bussers

and front office clerks by Giant Labor Solutions, LLC in Houston, TX, New Orleans, LA, Kansas City, MO, Myrtle Beach, SC, Panama City, FL and Sedona, AZ.

(242) On or about June 17, 2008 defendant ASKARKHODJAEV submitted INS form I-129 Petition for Nonimmigrant Workers to the Citizenship and Immigration Services regarding 12 foreign national workers.

(243) On or about June 23, 2008 defendant YUNUSOV submitted INS form I-129 Petition for Nonimmigrant Workers to the Citizenship and Immigration Services regarding 37 foreign national workers.

(244) On or about June 30, 2008 defendant FAZILOV submitted INS form I-129 Petition for Nonimmigrant Workers to the Citizenship and Immigration Services regarding 82 foreign national workers.

(245) On or about July 1, 2008 defendant ASKARKHODJAEV submitted INS form I-129 Petition for Nonimmigrant Workers to the Citizenship and Immigration Services regarding 9 foreign national workers.

(246) On or about July 1, 2008 defendant YUNUSOV submitted INS form I-129 Petition for Nonimmigrant Workers to the Citizenship and Immigration Services regarding 129 foreign national workers.

(247) On or about July 2, 2008 defendant DOUGHERTY caused an e-mail to be sent regarding the fulfillment of labor leasing contracts in Panama City, FL and Arizona.

(248) On or about July 7, 2008 defendant DOUGHERTY caused an e-mail to be sent regarding the housing of foreign nationals used to fulfill labor leasing contracts.

(249) On or about July 11, 2008 defendant DOUGHERTY telephonically contacted defendant ASKARKHODJAEV to inform him that two Turkish foreign national workers should be diverted from South Carolina to Key West, FL as a driver and as a houseman.

(250) On or about July 28, 2008 defendant ASKARKHODJAEV submitted INS form I-129 Petition for Nonimmigrant Workers to the Citizenship and Immigration Services regarding 56 foreign national workers.

(251) On or about July 29, 2008 defendant DOUGHERTY telephonically contacted defendant ASKARKHODJAEV regarding housing fees for foreign national workers.

(252) On or about July 30, 2008 defendant YUNUSOV caused an e-mail to be sent regarding the option of foreign nationals remaining with their current employer or obtaining an unauthorized position with a non-H-2B petitioned company.

(253) On or about August 6, 2008 defendant SHUKUROV submitted to the Department of Labor an application for Alien Employment Certification form ETA 750 requesting 265 foreign national workers.

(254) On or about August 8, 2008 defendant ASKARKHODJAEV submitted INS form I-129 Petition for Nonimmigrant Workers to the Citizenship and Immigration Services regarding 12 foreign national workers.

(255) On or about August 14, 2008 defendant YUNUSOV caused an e-mail to be sent regarding the payment for the extension of H-2B visas.

(256) On or about August 25, 2008 defendant ASKARKHODJAEV submitted INS form I-129 Petition for Nonimmigrant Workers to the Citizenship and Immigration Services regarding 16 foreign national workers.

(257) On or about August 27, 2008 defendant SHUKUROV transported a foreign national worker from KCI Airport to 4141 Roanoke Road, Kansas City, MO.

(258) On or about August 27, 2008 defendant SHUKUROV caused an e-mail to be sent to defendant YUNUSOV regarding the database of clients for United Management, LLC.

(259) On or about August 28, 2008 defendant YUNUSOV caused an e-mail to be sent regarding work in an unauthorized H-2B position.

(260) On or about September 2, 2008 defendant SHUKUROV caused an e-mail to be sent to defendant ASKARKHODJAEV regarding the search terms for web sites maintained by the Enterprise.

(261) On or about September 7, 2008 defendant YUNUSOV caused an e-mail to be sent to Yosemite Management Group regarding hotel references, a proposed Labor Services Agreement and the obligation of Giant Labor Solutions, LLC to provide workers' compensation, insurance and unemployment benefits, and to deduct all payroll related taxes.

(262) On or about September 3, 2008 defendant SHUKUROV submitted to the Department of Labor an application for Alien Employment Certification form ETA 750 requesting 198 foreign national workers.

(263) On or about September 10, 2008 defendant YUNUSOV submitted INS form I-129 Petition for Nonimmigrant Workers to the Citizenship and Immigration Services regarding 6 foreign national workers.

(264) On or about September 12, 2008 defendant YUNUSOV caused an e-mail to be sent regarding employment opportunities offered by Giant Labor Solutions, LLC at Atlantic City, NJ and Casper, WY.

(265) On or about September 12, 2008 defendant YUNUSOV caused an e-mail to be sent regarding the ability to find employment for foreign nationals throughout the United States and the option for H-2B visa holders to hold second jobs.

(266) On or about September 14, 2008 defendant YUNUSOV caused an e-mail to be sent regarding the affiliation of Crystal Management, Inc., to Giant Labor Solutions, LLC and the request of an inflated requirement for housekeeping jobs.

(267) On or about September 20, 2008 defendant YUNUSOV caused an e-mail to be sent to defendant SHUKRUROV regarding biographical/employment information including the H-2B visa expiration dates for 241 employees.

(268) On or about September 22, 2008 defendant ASKARKHODJAEV submitted INS form I-129 Petition for Nonimmigrant Workers to the Citizenship and Immigration Services regarding 21 foreign national workers.

(269) On or about September 22, 2008 defendant YUNUSOV caused an e-mail to be sent regarding the collection of application fees and the recruitment of 249 Filipino workers.

(270) On or about September 23, 2008 Giant Labor Solutions, LLC caused a fax to be sent from Crown Center Hotel Complex, Inc. regarding labor costs in the amount of $411.75.

(271) On or about September 23, 2008 defendant YUNUSOV caused an e-mail to be sent to defendant SIMON regarding sales related documents including Giant Labor Solutions, LLC services information.

(272) On or about September 30, 2008 defendant ASKARKHODJAEV in conjunction with Giant Labor Solutions, LLC submitted to the Department of Labor an application for Alien Employment Certification form ETA 750 requesting 95 foreign national workers.

(273) On or about September 30, 2008 defendant ASKARKHODJAEV in conjunction with Giant Labor Solutions, LLC submitted to the Department of Labor an application for Alien Employment Certification form ETA 750 requesting 79 foreign national workers.

(274) On or about October 7, 2008 defendant FAZILOV submitted INS form I-129 Petition for Nonimmigrant Worker to the Citizenship and Immigration Services regarding 50 foreign national workers.

(275) On or about October 15, 2008 a foreign national was transported from KCI Airport by defendant SIMON to Giant Labor Solutions, LLC's office at 607 Westport Road, Kansas City, MO.

(276) On or about December 1, 2008 defendant YUNUSOV submitted INS form I-129 Petition for Nonimmigrant Workers to the Citizenship and Immigration Services regarding 37 foreign national workers.

(277) On or about December 3, 2008 defendant ASKARKHODJAEV submitted two INS I-129 Petition for Nonimmigrant Workers forms to the Citizenship and Immigration Services, one regarding 87 foreign national workers and one regarding 78 foreign national workers.

(278) On or about December 2008 defendant COLE traveled to the Dominican Republic, intending to interview and recruit foreign nationals to enter the United States from the Dominican Republic for the purpose of becoming employed in conjunction with Giant Labor Solutions, LLC or its affiliated Enterprise entities and, upon arriving in the Dominican Republic, defendant COLE did, in fact, conduct numerous such interviews.

(279) On or about January 15, 2009 defendant YUNUSOV submitted INS form I-129 Petition for Nonimmigrant Workers to the Citizenship and Immigration Services regarding one foreign national worker.

(280) On or about February 2009 defendant YUNUSOV and defendant SIMON met several foreign national employees at KCI Airport and transported them to the Days Inn hotel.

(281) On or about February 23, 2009 defendant ASKARKHODJAEV and defendant YUNUSOV transported approximately twenty-three foreign national workers from Kansas City International Airport to a Kansas City hotel for lodging.

(282) On or about March 2, 2009 defendant SIMON transported foreign national workers from the Kansas City International Airport to Giant Labor Solutions, LLC's office at 607 Westport Road, Kansas City, MO.

(283) On or about March 3, 2009 defendant SIMON arranged an interview for foreign national workers at the Plaza Embassy Suites in Kansas City, MO.

All in violation of 18 U.S.C. § 1962(d).

**COUNTS THREE through TWENTY-THREE**
**(Forced Labor Trafficking)**

The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs one through eighty-nine of this indictment.

Between on or about February 1, 2009, and on or about May 27, 2009, in the Western District of Missouri and elsewhere, ABRORKHODJA ASKARKHODJAEV, NODIR YUNUSOV, ANDREW COLE, and VIOREL SIMON, defendants herein, aiding and abetting each other and others, knowingly provided and obtained, and attempted to provide and obtain, the labor and services of the person from the Dominican Republic, as identified in Counts Three through Twenty-three below, and did so by means of: (a) serious harm and threats of serious harm to said person and another person; (b) the abuse and threatened abuse of law and legal process; and, (c) a scheme, plan, and pattern intended to cause said person to believe that, if said person did not perform such labor and services, that said person and another person would suffer serious harm.

| **Count** | **Victim Identifier** |
|---|---|
| Three | Victim #1 |
| Four | Victim #2 |
| Five | Victim #3 |
| Six | Victim #4 |
| Seven | Victim #5 |
| Eight | Victim #6 |
| Nine | Victim #7 |
| Ten | Victim #8 |
| Eleven | Victim #9 |
| Twelve | Victim #10 |
| Thirteen | Victim #11 |

| | |
|---|---|
| Fourteen | Victim #12 |
| Fifteen | Victim #13 |
| Sixteen | Victim #14 |
| Seventeen | Victim #15 |
| Eighteen | Victim #16 |
| Nineteen | Victim #17 |
| Twenty | Victim #18 |
| Twenty-one | Victim #19 |
| Twenty-two | Victim #20 |
| Twenty-three | Victim #21 |

All in violation of 18 U.S.C. §§ 1589(a), 1594(a), and 2.

**COUNTS TWENTY-FOUR through SIXTY-TWO**
**(Forced Labor Trafficking)**

The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs one through eighty-seven of this indictment.

Between on or about January 1, 2007, and on or about May 27, 2009, in the Western District of Missouri and elsewhere, ABRORKHODJA ASKARKHODJAEV, NODIR YUNUSOV, RUSTAMJON SHUKUROV, ILKHAM FAZILOV, and VIOREL SIMON, defendants herein, aiding and abetting each other and others, knowingly provided and obtained, and attempted to provide and obtain, the labor and services of the person from the Republic of the Phillipines, identified in Counts Twenty-four through Sixty-two below, and did so by means of: (a) serious harm and threats of serious harm to said person and another person; (b) the abuse and threatened abuse of law and legal process; and, (c) a scheme, plan, and pattern intended to cause said person

to believe that, if said person did not perform such labor and services, that said person and another person would suffer serious harm.

| **Count** | **Victim Identifier** |
|---|---|
| Twenty-Four | Victim #22 |
| Twenty-Five | Victim #23 |
| Twenty-Six | Victim #24 |
| Twenty-Seven | Victim #25 |
| Twenty-Eight | Victim #26 |
| Twenty-Nine | Victim #27 |
| Thirty | Victim #28 |
| Thirty-One | Victim #29 |
| Thirty-Two | Victim #30 |
| Thirty-Three | Victim #31 |
| Thirty-Four | Victim #32 |
| Thirty-Five | Victim #33 |
| Thirty-Six | Victim #34 |
| Thirty-Seven | Victim #35 |
| Thirty-Eight | Victim #36 |
| Thirty-Nine | Victim #37 |
| Forty | Victim #38 |
| Forty-One | Victim #39 |
| Forty-Two | Victim #40 |
| Forty- Three | Victim #41 |
| Forty-Four | Victim #42 |
| Forty-Five | Victim #43 |
| Forty-Six | Victim #44 |
| Forty-Seven | Victim #45 |

| | |
|---|---|
| Forty-Eight | Victim #46 |
| Forty-Nine | Victim #47 |
| Fifty | Victim #48 |
| Fifty-One | Victim #49 |
| Fifty-Two | Victim #50 |
| Fifty-Three | Victim #51 |
| Fifty-Four | Victim #52 |
| Fifty-Five | Victim #53 |
| Fifty-Six | Victim #54 |
| Fifty-Seven | Victim #55 |
| Fifty-Eight | Victim #56 |
| Fifty-Nine | Victim #57 |
| Sixty | Victim #58 |
| Sixty-One | Victim #59 |
| Sixty-Two | Victim #60 |

All in violation of 18 U.S.C. §§ 1589(a), 1594(a), and 2.

**COUNTS SIXTY-THREE through EIGHTY-THREE**
**(Fraud in Foreign Labor Contracting)**

The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs one through eighty-nine of this indictment.

Between on or about December 24, 2008, and on or about May 27, 2009, in the Western District of Missouri and elsewhere, ABRORKHODJA ASKARKHODJAEV, NODIR YUNUSOV, VIOREL SIMON, and ANDREW COLE, defendants herein, aiding and abetting each other and others, knowingly and with the intent to defraud, recruited, solicited, and hired, and attempted to recruit, solicit, and hire, the person from the Dominican Republic, as identified in Counts

Sixty-three through Eighty-three below, and did so for the purpose of said person's employment in the United States by means of materially false and fraudulent pretenses, representations and promises regarding that employment.

| **Count** | **Victim Identifier** |
|---|---|
| Sixty-three | Victim #1 |
| Sixty-four | Victim #2 |
| Sixty-five | Victim #3 |
| Sixty-six | Victim #4 |
| Sixty-seven | Victim #5 |
| Sixty-eight | Victim #6 |
| Sixty-nine | Victim #7 |
| Seventy | Victim #8 |
| Seventy-one | Victim #9 |
| Seventy-two | Victim #10 |
| Seventy-three | Victim #11 |
| Seventy-four | Victim #12 |
| Seventy-five | Victim #13 |
| Seventy-six | Victim #14 |
| Seventy-seven | Victim #15 |
| Seventy-eight | Victim #16 |
| Seventy-nine | Victim #17 |
| Eighty | Victim #18 |
| Eighty-one | Victim #19 |
| Eighty-two | Victim #20 |
| Eighty-three | Victim #21 |

All in violation of 18 U.S.C. §§ 1351, 1349, and 2.

**COUNT EIGHTY-FOUR**
**(Aggravated Identity Theft)**

The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs one through eighty-nine of this indictment.

On or about April 26, 2005, in the Western District of Missouri and elsewhere, SANDJAR AGZAMOV, defendant herein, knowingly used without lawful authority, a means of identification of another person, to wit, the name of Farukh Akhmedov, for the purpose of establishing KC Janitorial Services, LLC account number 5091116607, at Bank of America, during and in relation to the offense of mail fraud regarding the aforementioned scheme to secure labor leasing contracts, as described in paragraphs one through fifty-nine of this indictment, contrary to the provisions of 18 U.S.C. § 1341.

All in violation of 18 U.S.C. § 1028A(a)(1).

**COUNT EIGHTY-FIVE**
**(Aggravated Identity Theft)**

The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs one through eighty-nine of this indictment.

On or about December 26, 2006, in the Western District of Missouri and elsewhere, SANDJAR AGZAMOV, defendant herein, knowingly used without lawful authority, a means of identification of another person, to wit, the name of Farukh Akhmedov, for the purpose of establishing KC Janitorial Services, LLC account number 176611, at Mazuma Credit Union, during and in relation to the offense of mail fraud regarding the aforementioned scheme to secure labor leasing contracts, as described in paragraphs one through fifty-nine of this indictment, contrary to the provisions of 18 U.S.C. § 1341.

All in violation of 18 U.S.C. § 1028A(a)(1).

**COUNT EIGHTY-SIX**
**(Identity Theft)**

The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs one through eighty-nine of this indictment.

On or about November 4, 2002, and continuing through on or about September 25, 2005, in the Western District of Missouri and elsewhere, ABRORKHODJA ASKARKHODJAEV, defendant herein, knowingly used in or affecting interstate and foreign commerce, without lawful authority, a means of identification of another person, to wit, the name of Abdumajid Maksudov, for the purpose of establishing and utilizing MMC Professional Cleaning, Inc. account number 90013891, between the dates listed above, at First National Bank, with the intent to commit or to aid or abet, any unlawful activity that constitutes a violation of federal law, that is, mail fraud regarding the aforementioned scheme to secure labor leasing contracts, as described in paragraphs one through fifty-nine of this indictment, contrary to the provisions of 18 U.S.C. § 1341, and as a result of the offense the defendant or any other individual committing the offense obtained anything of value aggregating $1,000 or more during any one year period.

All in violation of 18 U.S.C. §§ 1028(a)(7) and (b)(1)(D).

## COUNT EIGHTY-SEVEN
## (Harboring Illegal Aliens)

The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs one through eighty-nine of this indictment.

Beginning on or about November 2002 and continuing through on or about September 2005, in the Western District of Missouri and elsewhere, ABRORKHODJA ASKARKHODJAEV defendant herein, in conjunction with MMC Professional Cleaning, Inc. knowingly and in reckless disregard of the fact that an alien, namely, one of the persons listed in Racketeering Act Four at paragraph seventy-one of this indictment, had come to, entered and remained in the United States in violation of law, concealed, harbored, and shielded from detection such alien in buildings and other places for the purpose of commercial advantage and private financial gain.

All in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii) and (a)(1)(B)(i).

## COUNT EIGHTY-EIGHT
## (Marriage Fraud)

The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs one through eighty-nine of this indictment.

On or about June 19, 2004, in the Western District of Missouri, ABRORKHODJA ASKARKHODJAEV, defendant herein, a citizen of Uzbekistan and therefore an alien in the United States, knowingly and unlawfully entered into a marriage with a United States citizen for the purpose of evading any provision of the immigration laws of the United States.

All in violation of 8 U.S.C. § 1325(c).

**COUNT EIGHTY-NINE**
**(Visa Fraud)**

The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs one through eighty-nine of this indictment.

On or about August 30, 2004, in the Western District of Missouri and elsewhere, ABRORKHODJA ASKARKHODJAEV, defendant herein, knowingly made and caused another to make under oath and knowingly subscribe as true under penalty of perjury under 28 U.S.C. § 1746, a false statement with respect to a material fact in an application required by the immigration laws and regulations prescribed thereunder, to wit, a Petition for Alien Relative, designated as INS Form I-130, that is, that ASKARKHODJAEV lived with his United States citizen wife, at 19004 E. 37th Terrace, Independence, Missouri, which statement ASKARKHODJAEV then and there knew was false, in that ASKARKHODJAEV resided apart from his United States Citizen wife who resided at 19004 E. 37th Terrace, Independence, Missouri.

All in violation of 18 U.S.C. §§ 1546(a) and 2.

**COUNT NINETY**
**(Visa Fraud)**

The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs one through eighty-nine of this indictment.

On or about August 30, 2004, in the Western District of Missouri and elsewhere, ABRORKHODJA ASKARKHODJAEV, defendant herein, knowingly made and caused another to make under oath and knowingly subscribe as true under penalty of perjury under 28 U.S.C. § 1746, a false statement with respect to a material fact in an application required by the immigration laws and regulations prescribed thereunder, to wit, an Application to Register Permanent Residence, designated as INS Form I-485, that is, that ASKARKHODJAEV lived with his United States

citizen wife, at 19004 East 37th Terrace South, Independence, Missouri, which statement ASKARKHODJAEV then and there knew was false, in that ASKARKHODJAEV resided apart from his United States citizen wife who resided at 19004 East 37th Terrace South, Independence, Missouri.

All in violation of 18 U.S.C. §§ 1546(a) and 2.

**COUNT NINETY-ONE**
**(Harboring Illegal Aliens)**

The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs one through eighty-nine of this indictment.

Beginning on or about January 1, 2005 and continuing through on or about June 15, 2007, in the Western District of Missouri and elsewhere, ABRORKHODJA ASKARKHODJAEV and SANDJAR AGZAMOV, defendants herein, aiding and abetting each other and others, in conjunction with Giant Labor Solutions, LLC and KC Janitorial Services, LLC, knowingly and in reckless disregard of the fact that an alien, namely, one of the persons listed in Racketeering Act Five at paragraph seventy-two of this indictment, had come to, entered and remained in the United States in violation of law, concealed, harbored and shielded from detection, such alien in buildings and other places for the purpose of commercial advantage and private financial gain.

All in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii), (a)(1)(B)(i) and 18 U.S.C. § 2.

**COUNTS NINETY-TWO through NINETY-FOUR**
**(Financial Transactions Money Laundering)**

The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs one through eighty-nine of this indictment.

On or about the dates listed below, in the Western District of Missouri, ABRORKHODJA ASKARKHODJAEV, defendant herein, knowingly engaged in a monetary transaction affecting

interstate commerce, regarding property ASKARKHODJAEV knew was criminally derived, of a value greater than $10,000, which was derived from the proceeds of a specified unlawful activity, that is mail fraud, contrary to the provisions of 18 U.S.C. § 1341, as part of the aforementioned scheme to fraudulently obtain labor leasing contracts, as described in paragraphs one through fifty-nine of this indictment, in the below listed amounts, through deposits into his Bank of America account number 3462566680:

| **Count** | **Defendant** | **Date of Deposit** | **Amount of Deposit** |
|---|---|---|---|
| Ninety-Two | Askarkhodjaev | August 24, 2006 | $57,476.28 |
| Ninety-Three | Askarkhodjaev | June 19, 2007 | $44,906.44 |
| Ninety-Four | Askarkhodjaev | September 19, 2007 | $52,272.43 |

All in violation of 18 U.S.C. § 1957(a).

**COUNTS NINETY-FIVE THROUGH NINETY-SEVEN**
**(Mail Fraud)**

The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs one through eighty-nine of this indictment.

On or about the dates listed below, in the Western District of Missouri and elsewhere, ABRORKHODJA ASKARKHODJAEV, defendant herein, having devised, and for the purpose of executing and in order to effect the aforementioned scheme to fraudulently obtain labor leasing contracts as described in paragraphs one through fifty-nine of this indictment, by means of material false and fraudulent representations, knowingly caused to be deposited in an authorized depository for mail matter, the following checks to be sent and delivered by the United States Postal Service from the Westin Crown Center to the Giant Labor Solutions, LLC office at 607 Westport Road, Kansas City, Missouri:

| Count | Defendant | Date of Mailing | Description of Mailed check | Amount of Proceeds |
|---|---|---|---|---|
| Ninety-Five | Askarkhodjaev | August 23, 2006 | Check #55006 from the Westin Crown Center | $57,476.28 |
| Ninety-Six | Askarkhodjaev | September 27, 2006 | Check #55458 from the Westin Crown Center | $50,758.22 |
| Ninety-Seven | Askarkhodjaev | September 18, 2007 | Check #61106 from the Westin Crown Center | $50,522.29 |

All in violation of 18 U.S.C. § 1341.

**COUNTS NINETY-EIGHT THROUGH ONE HUNDRED ONE**
**(Promotion Money Laundering)**

The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs one through eighty-nine of this indictment

On or about the dates listed below, in the Western District of Missouri and elsewhere, the defendants named in each count below, aiding and abetting each other and others, knowingly conducted a financial transaction affecting interstate commerce, as described below, which involved the proceeds of a specified unlawful activity, that is, mail fraud, contrary to the provisions of 18 U.S.C. § 1341, as part of the aforementioned scheme to fraudulently obtain labor leasing contracts, as described in paragraphs one through fifty-nine in this indictment, with the intent to promote the carrying on of said specified unlawful activity, to wit:  through the payment of salaries to the below listed defendants, allowing the Enterprise to engage in continued unlawful activity, and that while conducting such financial transaction, defendants knew that the funds involved in the financial transaction represented the proceeds of some form of unlawful activity:

| Count | Date | Defendants | Financial Transaction |
|---|---|---|---|
| Ninety-Eight | August 22, 2005 | Askarkhodjaev<br>Dougherty<br>Agzamov | Askarkhodjaev and Dougherty caused Agzamov to issue payroll check #2168 from the Bank of America account of KC Janitorial Services, LLC to Dougherty in the amount of $5,137.25 |
| Ninety-Nine | March 9, 2007 | Agzamov<br>Azizkhodjaev | Agzamov and Azizkhodjaev caused KC Janitorial to issue check # 1303 to Azizkhodjaev in the amount of $2,856.00 |
| One Hundred | May 18, 2007 | Agzamov<br>Azizkhodjaev | Agzamov and Azizkhodjaev caused KC Janitorial to issue check # 1512 to Azizkhodjaev in the amount of $2,698.50 |
| One Hundred One | April 28, 2008 | Fazilov | Fazilov caused Five Star Cleaning, LLC to issue payroll check #2300 to Fazilov in the amount of $21,227.50 |

All in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 2.

**COUNT ONE HUNDRED TWO**
**(Transportation of Illegal Aliens)**

The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs one through eighty-nine of this indictment.

Beginning on or about January 15, 2009, and continuing through on or about January 17, 2009, in the Western District of Missouri and elsewhere, ABRORKHODJA ASKARKHODJAEV, VIOREL SIMON, NODIR YUNUSOV, RUSTAMJON SHUKUROV, and ANDREW COLE, defendants herein, aiding and abetting each other and others, knowingly and in reckless disregard of the fact that a certain alien namely, one of the persons listed in Racketeering Act Eight at paragraph seventy-six of this indictment, had come to, entered and remained in the United States in violation of law, moved and transported such alien within the United States by means of transportation or otherwise, that is, by transporting the alien by vehicle to Wyoming from

Kansas City, Missouri, in furtherance of such violation of law, for the purpose of commercial advantage and private financial gain.

All in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), (a)(1)(A)(v)(II), and (a)(1)(B)(ii).

**COUNTS ONE HUNDRED THREE THROUGH ONE HUNDRED FIVE**
**(Concealment Money Laundering)**

The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs one through eighty-nine of this indictment.

On or about the dates listed below, in the Western District of Missouri and elsewhere, the defendants named in each count below, aiding and abetting each other and others, knowingly conducted a financial transaction affecting interstate commerce, to wit, the movement of funds as described below, from the Bank of America account controlled by defendant ASKARKHODJAEV to the following accounts controlled by the listed defendants, which involved the proceeds of a specified unlawful activity, that is mail fraud, contrary to the provisions of 18 U.S.C. § 1341, as part of the aforementioned scheme to fraudulently obtain labor leasing contracts as described in paragraphs one through fifty-nine of this indictment, knowing the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity and that while conducting such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

| Count | Defendants | Date | Transferee | Bank Account | Amount |
|---|---|---|---|---|---|
| One Hundred Three | Askarkhodjaev Agzamov | August 28, 2006 | Agzamov | Bank of America account number 7010 in the name of KC Janitorial Services controlled by defendant Agzamov. | $89,946.41 |

| Count | Defendants | Date | Transferee | Bank Account | Amount |
|---|---|---|---|---|---|
| One Hundred Four | Askarkhodjaev Kakhkharov | November 30, 2007 | Kakhkharov | Bank of the West account number 1640 in the name of Midwest Management Services, Inc. controlled by defendant Kakhhkharov. | $69,508.63 |
| One Hundred Five | Askarkhodjaev Fazilov | June 10, 2008 | Fazilov | Bank of the West account number 4776 in the name of Five Star Cleaning, LLC controlled by defendant Fazilov. | $71,319.00 |

All in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2.

**COUNTS ONE HUNDRED SIX THROUGH ONE HUNDRED NINE**
**(Visa Fraud)**

The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs one through eighty-nine of this indictment.

On or about the dates listed below, in the Western District of Missouri and elsewhere, the defendants named in each count below, aiding and abetting each other and others, knowingly made under oath and knowingly subscribed as true and certified under penalty of perjury, pursuant to 28 U.S.C. § 1746, a false statement with respect to a material fact in an application required by the immigration laws or regulations prescribed thereunder, to the United States Department of Labor in an application for Alien Employment Certification, form ETA 750, and as indicated in paragraph fifty-four of this indictment, that is, that the below listed entities annually employed an inflated number of workers; that these entities compensated workers through an hourly prevailing wage based on a forty hour week, rather than by commissions, bonuses or other incentives; that these entities were prepared to employ alien workers on or before their proposed entrance into the United

States; and that the work conditions and occupational environment provided by these entities were not contrary to federal, state or local law, which statements the below listed defendants then and there knew were false in that these entities did not employ the amount of workers claimed, these entities did not compensate their workers through the prevailing wage based on a forty hour week, these entities were not prepared to employ the number of requested alien workers on or before their proposed entry into the United States, and these entities provided work conditions and an occupational environment contrary to federal, state, and local law.

| **Count** | **Date** | **Defendants** | **Number of Requested Workers** | **ETA 750 Case Number** |
|---|---|---|---|---|
| One Hundred Six | January 5, 2007 | Askarkhodjaev | 200 | C-07064-23292 |
| One Hundred Seven | April 29, 2008 | Yunusov | 135 | C-08142-371-25 |
| One Hundred Eight | May 20, 2008 | Fazilov | 87 | C-081168-373-86 |
| One Hundred Nine | August 6, 2008 | Shukurov | 265 | Kansas |

All in violation of 18 U.S.C. §§ 1546(a) and 2.

**COUNT ONE HUNDRED TEN**
**(Harboring Illegal Aliens)**

The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs one through eighty-nine of this indictment.

Beginning on or about July 9, 2007, and continuing through on or about February 8, 2008, in the Western District of Missouri and elsewhere, ABRORKHODJA ASKARKHODJAEV and JAKHONGIR KAKHKHAROV, defendants herein, aiding and abetting each other and others, in conjunction with Midwest Management, Inc., knowingly and in reckless disregard of the fact that an alien, namely, one of the persons listed at paragraph seventy-nine in Racketeering Act Ten of this indictment, had come to, entered and remained in the United States in violation of law,

concealed, harbored and shielded from detection such alien in buildings and other places for the purpose of commercial advantage and private financial gain.

All in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii), (a)(1)(A)(v)(II) and (a)(1)(B)(i).

**COUNTS ONE HUNDRED ELEVEN THROUGH ONE HUNDRED THIRTEEN**
**Fraudulent Petition for Nonimmigrant Worker**
**(Visa Fraud)**

The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs one through eighty-nine of this indictment.

On or about the dates listed below, in the Western District of Missouri and elsewhere, the defendants named in each count below, aiding and abetting each other and others, did knowingly make under oath and subscribe as true under penalty of perjury pursuant to 28 U.S.C. § 1746, a false statement with respect to a material fact in an application required by the Immigration laws and regulations prescribed thereunder, to wit, the INS form I-129 "Petition for Nonimmigrant Worker," which contained the below listed material false statements, which the defendants then and there knew were false, in that listed number of the aliens were not all employed for light cleaning as housekeepers on a full time basis; and that the aliens did not earn the weekly wages indicated; that the aliens were not all employed at locations in the state of Missouri; that the companies listed including Giant Labor Solutions, LLC, Crystal Management, Inc., and Five Star Cleaning, LLC, did not employ the number of workers stated; and that these entities did not earn the amount of annual gross and net income claimed:

| Count | Date | Defendant | False Statements by Defendant | Petition Number |
|---|---|---|---|---|
| One Hundred Eleven | October 7, 2008 | Fazilov | that 50 aliens would be employed for light housekeeping duties as housekeepers on a full-time basis by Five Star earning a weekly wage of $279.20; at locations in Missouri specified on the petition; that the company has 92 employees and an Annual Gross Income of $1,596,334.48 and Net Annual Income was $126,157.62 | WAC0900551392 |
| One Hundred Twelve | December 3, 2008 | Askarkhodjaev | that 87 aliens would be employed for light housekeeping duties as housekeepers on a full-time basis by GLS earning a weekly wage of $308.40; at locations in Missouri specified on the petition; that the company has 285 employees and an Annual Gross Income of $1,434,347.38 and Net Annual Income was $125,414.11 | WAC0904350833 |
| One Hundred Thirteen | May 29, 2008 | Yunusov | that 133 aliens would be employed for light housekeeping duties as housekeepers on a full-time basis by Crystal earning a weekly wage of $279.20; at locations in Missouri specified on the petition; that the company has 270 employees and an Annual Gross Income of $1,434,347.38 and Net Annual Income was $125,414.11 | WAC0817052296 |

All in violation of 18 U.S.C. §§ 1546(a) and 2.

**COUNT ONE HUNDRED FOURTEEN**
**(Harboring Illegal Aliens)**

The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs one through eighty-nine of this indictment.

Beginning on or about December 1, 2007, and continuing through on or about February 29, 2008, in the Western District of Missouri and elsewhere, ABRORKHODJA ASKARKHODJAEV and ILKHAM FAZILOV, defendants herein, aiding and abetting each other

and others, and in conjunction with Five Star Cleaning, LLC, knowingly and in reckless disregard of the fact that an alien, namely, one of the persons listed in Racketeering Act Twelve at paragraph eighty-two of this indictment, had come to, entered and remained in the United States in violation of law, concealed, harbored and shielded from detection such alien in buildings and other places for the purpose of commercial advantage and private financial gain.

All in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii), (a)(1)(A)(v)(II), and (a)(1)(B)(i).

**COUNT ONE HUNDRED FIFTEEN**
**(Extortion)**

The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs one through eighty-nine of this indictment.

Beginning on or about between December 1, 2007, and continuing through on or about January 2, 2008, in the Western District of Missouri and elsewhere, ABRORKHODJA ASKARKHODJAEV, RUSTAMJON SHUKUROV, and NODIR YUNUSOV, defendants herein, aiding and abetting each other and others, knowingly obstructed, delayed and affected, and attempted to obstruct, delay and affect commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in 18 U.S.C. § 1951, that is, defendants obtained and attempted to obtain the property of defendant Kakhkharov with his consent induced by the wrongful use of force, violence and fear.

All in violation of 18 U.S.C. §§ 1951(a) and 2.

**COUNT ONE HUNDRED SIXTEEN**
**(Interstate Travel in Aid of Racketeering)**

The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs one through eighty-nine of this indictment.

Beginning on or about January 1, 2008, and continuing through on or about January 2, 2008, in the Western District of Missouri and elsewhere, ABRORKHODJA ASKARKHODJAEV, RUSTAMJON SHUKUROV, and NODIR YUNUSOV, defendants herein, aiding and abetting each other and others, traveled in interstate commerce from the state of Missouri to the state of Kansas with the intent to commit a crime of violence to further an unlawful activity, that is, extortion contrary to the provisions of 18 U.S.C. § 1951(a), and thereafter committed and attempted to commit the crime of violence to further such unlawful activity.

All in violation of 18 U.S.C. §§ 1952(a)(2) and 2.

**COUNTS ONE HUNDRED SEVENTEEN THROUGH ONE HUNDRED TWENTY-ONE**
**(Wire Fraud)**

The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs one through eighty-nine of this indictment.

On or about the dates listed below, in the Western District of Missouri and elsewhere, the defendants named in each count below, aiding and abetting each other, for the purpose of executing the aforementioned scheme to fraudulently obtain labor leasing contracts, as described in paragraphs one through fifty-nine of this indictment, by means of material false and fraudulent representations and pretenses, knowingly transmitted and caused to be transmitted by wire communications in interstate commerce, certain writings, signs, signals and sounds, that is, the following e-mails, as described below:

| **Count** | **Date** | **Defendant** | **Description of Wire Communication** |
|---|---|---|---|
| One Hundred Seventeen | April 22, 2008 | Askarkhodjaev | E-mail re: Abror's co-ownership and common payroll with Crystal Management, Inc.and Giant Labor Solutions, Inc. and Abror's inflated request for H2-B visa workers to Hilton Hotels, Inc. from Kansas City, MO through Yahoo! Inc. outside the state of Missouri |

| Count | Date | Defendant | Description of Wire Communication |
|---|---|---|---|
| One Hundred Eighteen | September 7, 2008 | Yunusov | E-mail re: hotel references, a proposed Labor Services Agreement and the obligation of GLS to provide worker's compensation, insurance and unemployment benefits, and to deduct all payroll related taxes to Yosemite Management Group in California from Kansas City, MO |
| One Hundred Nineteen | March 14, 2008 | Shukurov | E-mail re: the distribution and sale of H2-B visa extensions and job opportunities offered to foreign nationals by the Enterprise in Florida, South Carolina, Missouri, Louisiana, Alabama, Kansas and New Jersey from Kansas City, MO through Yahoo!, Inc. outside the state of Missouri |
| One Hundred Twenty | July 7, 2008 | Dougherty | E-mail re: the housing of foreign nationals used to fulfill labor leasing contracts from St. Louis, MO through Yahoo!, Inc. outside the state of Missouri |
| One Hundred Twenty-One | May 7, 2007 | Askarkhodjaev | Facsimile including Giant Labor Solutions, Inc., payroll information and annual tax information for workers' compensation and general liability policies with Brier Payne Meade Insurance, Inc., from GLS in Kansas City, MO, to Brier Payne Meade Insurance, Inc., in Overland Park, KS. |

All in violation of 18 U.S.C. §§ 1343 and 2.

**COUNTS ONE HUNDRED TWENTY-TWO THROUGH ONE HUNDRED TWENTY-SIX**
**(Mail Fraud)**

The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs one through eighty-nine of this indictment.

On or about the dates listed below, in the Western District of Missouri and elsewhere, the defendants named in each count below, aiding and abetting each other and others, having devised, and for the purpose of executing to effect the aforementioned scheme or artifice to defraud regarding labor leasing contracts, as described in paragraphs one through fifty-nine of this indictment, by means of material false and fraudulent representations and promises, knowingly caused to be deposited in an authorized depository for mail matter to be sent and delivered by the United States Postal Service, an Application for Alien Employment Certification, form ETA-750

and a Petition for Nonimmigrant Worker, Form I-129 requesting approval for the below listed alien workers:

| **Count** | **Defendants** | **Date of Mailing** | **Requested Number of Alien Workers and Petition No.** |
|---|---|---|---|
| One Hundred Twenty-Two | Askarkhodjaev | November 30, 2007 | 110 aliens, C-008017-35075 |
| One Hundred Twenty-Three | Fazilov | May 21, 2008 | 87 aliens, C-08168-37386 |
| One Hundred Twenty-Four | Shukurov | September 11, 2008 | 198 aliens, Missouri |
| One Hundred Twenty-Five | Yunusov | May 28, 2008 | 133 aliens, WAC0817052296 |
| One Hundred Twenty-Six | Abdoollayev | August 28, 2008 | 9 aliens, EAC 0823451389 |

All in violation of 18 U.S.C. §§ 1341 and 2.

**COUNT ONE HUNDRED TWENTY-SEVEN**
**(Transportation of Illegal Aliens)**

The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs one through eighty-nine of this indictment.

Beginning on or about February 9, 2009, and continuing through on or about February 28, 2009, in the Western District of Missouri and elsewhere, ABRORKHODJA ASKARKHODJAEV, VIOREL SIMON, NODIR YUNUSOV, and RUSTAMJON SHUKUROV, defendants herein, aiding and abetting each other and others, knowingly and in reckless disregard of the fact that a certain alien namely, any one of a group of sixteen aliens from the Dominican Republic, had come to, entered and remained in the United States in violation of law, moved and transported, and attempted to move and transport, such alien within the United States by means of transportation or otherwise, that is, by transporting the alien by vehicle to Alabama from Kansas City, Missouri, in

furtherance of such violation of law, for the purpose of commercial advantage and private financial gain.

All in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), (a)(1)(A)(v)(II), and (a)(1)(B)(ii).

**COUNTS ONE HUNDRED TWENTY-EIGHT THROUGH ONE HUNDRED THIRTY-SEVEN (Evasion of Corporate Employment Tax)**

The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs one through eighty-nine of this indictment.

On or about the dates listed below, in the Western District of Missouri, ABRORKHODJA ASKARKHODJAEV**,** defendant herein, who was the owner and operator of, and acted as President and Vice President of, Giant Labor Solutions, LLC, a limited liability corporation, did willfully evade and defeat, and attempt to willfully evade and defeat, a large part of the federal income taxes required to be withheld from wages, and the Federal Insurance Contributions Act (FICA) taxes due and owing to the United States of America, and did so by preparing and causing to be prepared, and by signing and causing to be signed, for each of the quarters listed below, an Employer's Quarterly Federal Tax Return, Form 941, which was filed with the Internal Revenue Service, and that falsely and fraudulently stated: (a) the amount of wages subject to withholding that was paid to employees by Giant Labor Solutions, LLC; and (b) the amount of federal income and FICA taxes that should have been withheld. In fact, as defendant ASKARKHODJAEV then and there well knew, the nominee Giant Labor Solutions, LLC entity listed in each count below paid wages that were subject to withholding, and by not reporting said wages on a Form 941, the amount of federal incomes taxes required to be withheld from wages was not paid to the United States, and the amount of FICA taxes due and owing to the United States was not paid, all in the approximate amounts listed in each count below.

| Count | Date of Offense | Quarter Ending | Stated Wages Subject to Withhold-ding Tax | Tax Withheld | Actual Wages Paid | Tax Due and Owing |
|---|---|---|---|---|---|---|
| One Hundred Twenty-Eight | February 13, 2006 | June 30, 2005 | $0.00 | $0.00 | $88,323,14 KC Janitorial Services, LLC | $13,513.44 |
| One Hundred Twenty-Nine | February 13, 2006 | September 30, 2005 | $0.00 | $0.00 | $252,334.01 KC Janitorial Services, LLC | $38,607.10 |
| One Hundred Thirty | February 13, 2006 | December 31, 2005 | $0.00 | $0.00 | $339,682.67 KC Janitorial Services, LLC | $51,971.45 |
| One Hundred Thirty-One | July 31, 2007 | June 30, 2007 | $12,415.07 | $2,634.16 | $361,666.73 KC Janitorial Services, LLC | $45,815.83 |
| One Hundred Thirty-Two | October 31, 2007 | September 30, 2007 | $72,262.97 | $11,669.81 | $488,797.21 Midwest Management, Inc. | $63,329.69 |
| One Hundred Thirty-Three | January 31, 2008 | December 31, 2007 | $88,300.08 | $16,649.02 | $372,842.03 Midwest Management, Inc. and Five Star Cleaning, LLC | $40,395.81 |
| One Hundred Thirty-Four | April 30, 2008 | March 31, 2008 | $29,038.36 | $4,509.84 | $202,326.70 Five Star Cleaning, LLC | $26,446.14 |
| One Hundred Thirty-Five | July 31, 2008 | June 30, 2008 | $84,649.65 | $16,927.12 | $287,562.44 Five Star Cleaning, LLC | $27,069.93 |
| One Hundred Thirty-Six | January 31, 2009 | December 31, 2008 | $269,540.52 | $18,011.85 | $398,508.59 Five Star Cleaning, LLC | $42,959.97 |

| | | | | | | |
|---|---|---|---|---|---|---|
| One Hundred Thirty-Seven | May 8, 2009 | March 31, 2009 | | $31,454.85 | $336,416.25 Five Star Cleaning, LLC and Suncoast Hospitality Inc. | $20,016.84 |

All in violation of 26 U.S.C. § 7201.

**COUNTS ONE HUNDRED THIRTY-EIGHT THROUGH ONE HUNDRED FORTY-THREE**
**(Evasion of Corporate Employment Tax)**

The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs one through eighty-nine of this indictment.

On or about the dates listed below, in the Western District of Missouri, ABRORKHODJA ASKARKHODJAEV**,** defendant herein, who was the owner and operator of, and acted as President and Vice President of, Giant Labor Solutions, LLC, a limited liability corporation, did willfully evade and defeat, and attempt to willfully evade and defeat, a large part of the federal income taxes required to be withheld from wages, and the Federal Insurance Contributions Act (FICA) taxes due and owing to the United States of America, and did so by failing to prepare and sign, and by failing to cause the preparation and signing of, for each of the quarters listed below, an Employer's Quarterly Federal Tax Return, Form 941, which was required to be filed with the Internal Revenue Service, and truthfully report and state: (a) the amount of wages subject to withholding that was paid to employees by Giant Labor Solutions, LLC; and (b) the amount of federal income and FICA taxes that should have been withheld. In fact, defendant ASKARKHODJAEV knowingly caused the creation, and directed the use, of the nominee Giant Labor Solutions, LLC entity listed in each count below and, as defendant ASKARKHODJAEV then and there well knew, said nominee entities paid wages that were subject to withholding. By failing to report said wages on a Form 941,

the amount of federal income taxes required to be withheld from wages was not paid to the United States, and the amount of FICA taxes due and owing to the United States was not paid, all in the approximate amounts listed in each count below.

| Count | Date of Offense | Quarter Ending | Actual Wages Paid | Tax Due and Owing |
|---|---|---|---|---|
| One Hundred Thirty-Eight | April 17, 2006 | March 31, 2006 | $279,705.75 KC Janitorial Services, LLC | $42,794.98 |
| One Hundred Thirty-Nine | July 17, 2006 | June 30, 2006 | $357,047.46 KC Janitorial Services, LLC | $54,628.26 |
| One Hundred Forty | October 16, 2006 | September 30, 2006 | $400,152.04 KC Janitorial Services, LLC | $61,223.26 |
| One Hundred Forty-One | January 15, 2007 | December 31, 2006 | $327,238.78 KC Janitorial Services, LLC | $50,067.54 |
| One Hundred Forty-Two | April 16, 2007 | March 31, 2007 | $232,802.20 KC Janitorial Services, LLC | $35,618.74 |
| One Hundred Forty-Three | October 15, 2008 | September 30, 2008 | $256,375.03 Five Star Cleaning, LLC | $16,203.69 |

All in violation of 26 U.S.C. § 7201.

## ALLEGATION OF FORFEITURE

### I. RICO Forfeiture Allegation

1. The factual allegations contained in this indictment are hereby repeated, realleged, and incorporated by reference herein as though fully set forth at length for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 1963, and 28 U.S.C. § 2461(c).

2. Pursuant to Rule 32.2(a), Fed. R. Crim. P., the defendants, ABRORKHODJA ASKARKHODJAEV, NODIR YUNUSOV, RUSTAMJON SHUKUROV, KRISTIN DOUGHERTY, ILKHAM FAZILOV, VIOREL SIMON, NODIRBEK N. ABDOOLLAYEV,

ANDREW COLE, SANDJAR AGZAMOV, and JAKHONGIR KAKHKHAROV are hereby notified that, upon conviction of the violation of 18 U.S.C. § 1962, as charged in Counts One and Two of the Indictment, the defendants shall forfeit, pursuant to 18 U.S.C. § 1963:

a) all interests acquired and maintained in violation of 18 U.S.C. § 1962;

b) all interests in, securities of, claims against, and property and contractual rights of any kind affording a source of influence over, the enterprise named and described herein which the defendant established, operated, controlled, conducted, and participated in the conduct of, in violation of 18 U.S.C. § 1962; and

c) all property constituting and derived from proceeds obtained, directly and indirectly, from racketeering activity in violation of 18 U.S.C. § 1962.

3. The property subject to forfeiture to the United States pursuant to 18, U.S.C. § 1963(a)(1), (a)(2), and (a)(3), includes, but is not limited to, the following:

a) a money judgment in the amount of at least $6,000,000, said amount being the total of the interests acquired and the gross proceeds charged and obtained through the violation of Title 18, United States Code, Section 1962, as follows:

i) The proceeds of account number 354001575905 held at Bank of America in Kansas City, Missouri in the name of Giant Labor Solutions, LLC, and/or a sum of money in United States currency representing the amount of proceeds obtained as a result of the offenses for which the defendants are liable.

ii) The proceeds of account number 3354003422250 held at Bank of America in Kansas City, Missouri in the name of Giant Labor

Solutions, LLC, and/or a sum of money in United States currency representing the amount of proceeds obtained as a result of the offenses for which the defendants are liable.

iii) The proceeds of account number 518001299069 held at Bank of America in Kansas City, Missouri in the name of Crystal Management, Inc., and/or a sum of money in United States currency representing the amount of proceeds obtained as a result of the offenses for which the defendants are liable.

iv) The proceeds of account number 518001804218 held at Bank of America in Kansas City, Missouri in the name of Crystal Management, Inc., and/or a sum of money in United States currency representing the amount of proceeds obtained as a result of the offenses for which the defendants are liable.

v) The proceeds of account number 518000908238 held at Bank of America in Sunny Isles Beach, Florida in the name of Five Star Cleaning, LLC, and/or a sum of money in United States currency representing the amount of proceeds obtained as a result of the offenses for which the defendants are liable.

vi) The proceeds of account number 898021254623 held at Bank of America in Sunny Isles Beach, Florida in the name of Suncoast Hospitality, Inc., and controlled by ILKHAM FAZILOV, and/or a sum of money in United States currency representing the amount of

proceeds obtained as a result of the offenses for which the defendants are liable.

vii) The proceeds of account number 898021254610 held at Bank of America in Sunny Isles Beach, Florida in the name of Suncoast Hospitality, Inc., and controlled by ILKHAM FAZILOV, and/or a sum of money in United States currency representing the amount of proceeds obtained as a result of the offenses for which the defendants are liable.

viii) The proceeds of account number 4683349786 held at Bank of America in Kansas City, Missouri in the name of ABRORKHODJA ASKARKHODJAEV, and/or a sum of money in United States currency representing the amount of proceeds obtained as a result of the offenses for which the defendants are liable.

ix) The proceeds of account number 355000889866 held at Bank of America in Kansas City, Missouri in the name of ABRORKHODJA ASKARKHODJAEV, and/or a sum of money in United States currency representing the amount of proceeds obtained as a result of the offenses for which the defendants are liable.

x) The proceeds of account number 168684 held at Mazuma Credit Union in Kansas City, Missouri in the name of ABRORKHODJA ASKARKHODJAEV, and/or a sum of money in United States currency representing the amount of proceeds obtained as a result of the offenses for which the defendants are liable.

xi) The proceeds of account number 39924536 held at Commerce Bank in Kansas City, Missouri in the name of ABRORKHODJA ASKARKHODJAEV, and/or a sum of money in United States currency representing the amount of proceeds obtained as a result of the offenses for which the defendants are liable.

xii) The proceeds of account number 164694 held at Mazuma Credit Union in Kansas City, Missouri in the name of Farukh Akhmedov, an alias for SANDJAR AGZAMOV, and/or a sum of money in United States currency representing the amount of proceeds obtained as a result of the offenses for which the defendants are liable.

xiii) The proceeds of account number 3491580712 held at Bank of America in Kansas City, Missouri in the name of NODIR YUNUSOV, and/or a sum of money in United States currency representing the amount of proceeds obtained as a result of the offenses for which the defendants are liable.

xiv) The proceeds of account number 3491671333 held at Bank of America in Kansas City, Missouri in the name of NODIR YUNUSOV, and/or a sum of money in United States currency representing the amount of proceeds obtained as a result of the offenses for which the defendants are liable.

xv) The proceeds of account number180368 held at Mazuma Credit Union in Kansas City, Missouri in the name of NODIR YUNUSOV, and/or a sum of money in United States currency

representing the amount of proceeds obtained as a result of the offenses for which the defendants are liable.

xvi) The proceeds of account number 518002168296 held at Bank of America in Kansas City, Missouri in the name of ILKHAM FAZILOV, and/or a sum of money in United States currency representing the amount of proceeds obtained as a result of the offenses for which the defendants are liable.

xvii) The proceeds of account number 518000908225 held at Bank of America in Kansas City, Missouri in the name of ILKHAM FAZILOV, and/or a sum of money in United States currency representing the amount of proceeds obtained as a result of the offenses for which the defendants are liable.

xviii) The proceeds of account number 145570916323 held at US Bank in Kansas City, Missouri in the name of ILKHAM FAZILOV, and/or a sum of money in United States currency representing the amount of proceeds obtained as a result of the offenses for which the defendants are liable.

xix) The proceeds of account number 5563318580 held at Bank of America in St. Ann, Missouri in the name of KRISTIN DOUGHERTY, and/or a sum of money in United States currency representing the amount of proceeds obtained as a result of the offenses for which the defendants are liable.

xx) The proceeds of account number 3541266481 held at Bank of America in St. Ann, Missouri in the name of People, Inc., and controlled by KRISTIN DOUGHERTY, and/or a sum of money in United States currency representing the amount of proceeds obtained as a result of the offenses for which the defendants are liable.

xxi) The proceeds of account number 8220266806 held at Regions Bank in St. Louis, Missouri in the name of Hotel and Resort Services, and controlled by KRISTIN DOUGHERTY, and/or a sum of money in United States currency representing the amount of proceeds obtained as a result of the offenses for which the defendants are liable.

xxii) The proceeds of account number 3101703490 held at Regions Bank in St. Louis, Missouri in the name of Anchor Building Services, and controlled by KRISTIN DOUGHERTY, and/or a sum of money in United States currency representing the amount of proceeds obtained as a result of the offenses for which the defendants are liable.

b) all rights, title and interests of the defendants, ABRORKHODJA ASKARKHODJAEV, NODIR YUNUSOV, RUSTAMJON SHUKUROV, KRISTIN DOUGHERTY, ILKHAM FAZILOV, VIOREL SIMON, NODIRBEK N. ABDOOLLAYEV, ANDREW COLE, SANDJAR AGZAMOV, and JAKHONGIR KAKHKHAROV in Giant Labor Solutions, LLC, Crystal Management, Inc., and Five Star Cleaning, LLC.

4. Pursuant to 18 U.S.C. § 1963(m) and 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), the defendant shall forfeit substitute property up to the value of

the property described in the previous paragraph if that property, as a result of any act or omission of the defendant:

a) cannot be located upon the exercise of due diligence;

b) has been transferred or sold to, or deposited with, a third party;

c) has been placed beyond the jurisdiction of this Court;

d) has been substantially diminished in value; or

e) has been commingled with other property which cannot be divided without difficulty.

5. The above-named defendants, and each of them, are jointly and severally liable for the forfeiture obligations as alleged above. (All in accordance with 18 U.S.C. § 1963; 28 U.S.C. § 2461(c); and Rule 32.2(a), Federal Rules of Criminal Procedure.)

**II. Forced Labor Trafficking**

1. The factual allegations contained in this indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 1594(d), and 28 U.S.C. § 2461(c).

2. Upon conviction of the offenses in violation of 18 U.S.C. § 1589 set forth in Counts Three through Sixty-Two of this indictment, defendants ABRORKHODJA ASKARKHODJAEV, NODIR YUNUSOV, RUSTAMJON SHUKUROV, ILKHAM FAZILOV, VIOREL SIMON, and ANDREW COLE shall forfeit to the United States of America, pursuant to18 U.S.C. § 1594(d) and 28 U.S.C. § 2461, and under the procedures set forth in Fed. R. Crim. P. 32.2: all property, real or personal, that constitutes or is derived from proceeds traceable to the commission of the offense including, but not limited to, the following: $6,000,000.00.

3. If any of the property described above, as a result of any act or omission

of the defendant:

a) cannot be located upon the exercise of due diligence;

b) has been transferred or sold to, or deposited with, a third party;

c) has been placed beyond the jurisdiction of the court;

d) has been substantially diminished in value; or

e) has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 1956(c)(7)(A), 18 U.S.C. § 1961(1) and 28 U.S.C. §§ 2461(c) and (a).

(All pursuant to 18 U.S.C. § 1594 and 28 U.S.C. § 2461(c)).

**III. <u>Harboring Illegal Aliens</u>**

1. The factual allegations contained in this indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture purpose of alleging forfeiture pursuant to the provisions of 8 U.S.C. § 1324(b), and 28 U.S.C. § 2461(c).

2. Upon conviction of the offenses in violation of 8 U.S.C. § 1324(a)(1)(A)(iii) as set forth in Counts Eighty-Seven, Ninety-One, One Hundred Ten, and One Hundred Fourteen of this indictment, defendant ABRORKHODJA ASKARKHODJAEV, SANDJAR AGZAMOV, JAKHONGIR KAKHKHAROV, and ILKHAM FAZILOV shall forfeit to the United States of America, pursuant to 8 U.S.C. § 1324(b) and 28 U.S.C. § 2461, and under the procedures set forth in Fed. R. Crim. P. 32.2: at least $6,000,000.00, said amount being the gross proceeds obtained through the violation of 8 U.S.C. § 1324(a)(1)(A)(iii)

3. If any of the property described above, as a result of any act or omission

of the defendant:

a) cannot be located upon the exercise of due diligence;

b) has been transferred or sold to, or deposited with, a third party;

c) has been placed beyond the jurisdiction of the court;

d) has been substantially diminished in value; or

e) has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 1956(c)(7)(A), 18 U.S.C. § 1961(1) and 28 U.S.C. § 2461(c).

(All pursuant to 18 U.S.C. § 1324(b) and 28 U.S.C. § 2461(c)).

**IV. <u>Visa Fraud</u>**

1. The factual allegations contained in this indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C.§ 982(a)(6)(A).

2. Upon conviction of the offenses in violation of 18 U.S.C. § 1546(a) as set forth in Counts Eighty-Nine, Ninety, One Hundred Six through One Hundred Nine, and One Hundred Eleven through One Hundred Thirteen, of this indictment, defendant ABRORKHODJA ASKARKHODJAEV, NODIR YUNUSOV, RUSTAMJON SHUKUROV, and ILKHAM FAZILOV shall forfeit to the United States of America, pursuant to 18 U.S.C. § 982(a)(6)(A) and 28 U.S.C. § 2461, and under the procedures set forth in Fed. R. Crim. P. 32.2: all property, real and personal, that constitutes, or is derived from or is traceable to the proceeds obtained directly or

indirectly from the commission of a violation of 18 U.S.C. § 1546(a) including, but not limited to, the following: $6,000,000.00.

3. If any of the property described above, as a result of any act or omission of the defendant:

a) cannot be located upon the exercise of due diligence;

b) has been transferred or sold to, or deposited with, a third party;

c) has been placed beyond the jurisdiction of the court;

d) has been substantially diminished in value; or

e) has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

(All pursuant to 18 U.S.C. § 982(a)(6)(A) and 28 U.S.C. § 2461(c)).

**V. <u>Money Laundering</u>**

1. The factual allegations contained in this indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 982(a)(1).

2. Upon conviction of the offenses in violation of 18 U.S.C. § 1957(a) as set forth in Counts Ninety-Two through Ninety-Four of this indictment, defendant ABRORKHODJA ASKARKHODJAEV shall forfeit to the United States of America, pursuant to18 U.S.C. § 982(a)(1) and 28 U.S.C. § 2461, and under the procedures set forth in Fed. R. Crim. P. 32.2: at least $948,801, said amount being the total of the interests acquired and the gross proceeds charged and obtained through the violation of 18 U.S.C. § 1957.

3. If any of the property described above, as a result of any act or omission of the defendant:

a) cannot be located upon the exercise of due diligence;

b) has been transferred or sold to, or deposited with, a third party;

c) has been placed beyond the jurisdiction of the court;

d) has been substantially diminished in value; or

e) has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

(All pursuant to 18 U.S.C. § 982(a)(1) and 28 U.S.C. § 2461(c)).

**VI. Mail Fraud**

1. The factual allegations contained in this indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 982(a)(3)(E).

2. Upon conviction of the offenses in violation of 18 U.S.C. §1341 set forth in Counts Ninety-Five through Ninety-Seven of this indictment, defendant ABRORKHODJA ASKARKHODJAEV shall forfeit to the United States of America, pursuant to U.S.C. § 982(a)(3)(E) and 28 U.S.C. § 2461, and under the procedures set forth in Fed. R. Crim. P. 32.2: at least $948,801, said amount being the total of the interests acquired and the gross proceeds charged and obtained through the violation of 18 U.S.C. § 1341.

3. If any of the property described above, as a result of any act or omission of the defendant:

a) cannot be located upon the exercise of due diligence;

b) has been transferred or sold to, or deposited with, a third party;

c) has been placed beyond the jurisdiction of the court;

d) has been substantially diminished in value; or

e) has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

(All pursuant to 18 U.S.C. § 982(a)(3)(E) and 28 U.S.C. § 2461(c)).

**VII. <u>Money Laundering</u>**

1. The factual allegations contained in this indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C.§ 982(a)(1).

2. Upon conviction of the offenses in violation of 18 U.S.C. § 1956(a)(1)(A)(i) as set forth in Counts Ninety-Eight through One Hundred One, of this indictment, defendants ABRORKHODJA ASKARKHODJAEV, KRISTIN DOUGHERTY, SANDJAR AGZAMOV, ABDUKAKHAR AZIZKHODJAEV, and ILKHAM FAZILOV shall forfeit to the United States of America, pursuant to 18 U.S.C. § 982(a)(1) and 28 U.S.C. § 2461, and under the procedures set forth in Fed. R. Crim. P. 32.2: at least $31,919 said amount being the total of the interests acquired and the gross proceeds charged and obtained through the violation of 18 U.S.C. § 1956.

3. If any of the property described above, as a result of any act or omission of the defendant:

a) cannot be located upon the exercise of due diligence;

b) has been transferred or sold to, or deposited with, a third party;

c) has been placed beyond the jurisdiction of the court;

d) has been substantially diminished in value; or

e) has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

(All pursuant to 18 U.S.C. § 982(a)(1) and 28 U.S.C. § 2461(c)).

**VIII. <u>Transportation of Illegal Aliens</u>**

1. The factual allegations contained in this indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 8 U.S.C. § 1324(b), and 28 U.S.C. § 2461(c).

2. Upon conviction of the offenses in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(I) as set forth in Counts One Hundred Two and One Hundred Twenty-Seven of this indictment, defendants ABRORKHODJA ASKARKHODJAEV, NODIR YUNUSOV, RUSTAMJON SHUKUROV, VIOREL SIMON, and ANDREW COLE shall forfeit to the United States of America, pursuant to 8 U.S.C. § 1324(b) and 28 U.S.C. § 2461, and under the procedures set forth in Fed. R. Crim. P. 32.2: at least $6,000,000.00, said amount being the gross proceeds obtained through the violation of 8 U.S.C. § 1324(a).

3. If any of the property described above, as a result of any act or omission of the defendant:

a) cannot be located upon the exercise of due diligence;

b) has been transferred or sold to, or deposited with, a third party;

c) has been placed beyond the jurisdiction of the court;

d) has been substantially diminished in value; or

e) has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 1956(c)(7)(A), 18 U.S.C. § 1961(1) and 28 U.S.C. § 2461(c).

(All pursuant to 18 U.S.C. § 1324(b) and 28 U.S.C. § 2461(c)).

**IX. Money Laundering**

1. The factual allegations contained in this indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 982(a)(1).

2. Upon conviction of the offenses in violation of 18 U.S.C. § 1956(a)(1)(B)(i) as set forth in Counts One Hundred Three through One Hundred Five of this indictment, defendants ABRORKHODJA ASKARKHODJAEV, SANDJAR AGZAMOV, JAKHONGIR KAKHKHAROV, and ILKHAM FAZILOV shall forfeit to the United States of America, pursuant to18 U.S.C. § 982(a)(1) and 28 U.S.C. § 2461, and under the procedures set forth in Fed. R. Crim. P. 32.2: at least $1,256,243, said amount being the total of the interests acquired and the gross proceeds charged and obtained through the violation of 18 U.S.C. § 1956.

3. If any of the property described above, as a result of any act or omission of the defendant:

a) cannot be located upon the exercise of due diligence;

b) has been transferred or sold to, or deposited with, a third party;

c) has been placed beyond the jurisdiction of the court;

d) has been substantially diminished in value; or

e) has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

(All pursuant to 18 U.S.C. § 982(a)(1) and 28 U.S.C. § 2461(c)).

**X. Extortion**

1. The factual allegations contained in this indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C).

2. Upon conviction of the offenses in violation of 18 U.S.C. § 1951(a) as set forth in Count One Hundred Fifteen of this indictment, defendants ABRORKHODJA ASKARKHODJAEV, RUSTAMJON SHUKUROV, and NODIR YUNUSOV shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 1956(c)(7), 18 U.S.C. § 1961(1) and 28 U.S.C. § 2461, and under the procedures set forth in Fed. R. Crim. P. 32.2: all property, real and personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1951(a) including, but not limited to, the following: $15,000.

3. If any of the property described above, as a result of any act or omission of the defendant:

a) cannot be located upon the exercise of due diligence;

b) has been transferred or sold to, or deposited with, a third party;

c) has been placed beyond the jurisdiction of the court;

d) has been substantially diminished in value; or

e) has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 1956(c)(7)(A), 18 U.S.C. § 1961(1) and 28 U.S.C. § 2461(c).

(All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)).

A TRUE BILL.

1/6/10
Date

/s/ David W. Lewis, Jr.
FOREPERSON OF THE GRAND JURY

/s/ Phillip Eugene Porter
Phillip Eugene Porter
Assistant United States Attorney

/s/ William L. Meiners
William L. Meiners
Assistant United States Attorney

/s/ Cynthia L. Cordes
Cynthia L. Cordes
Assistant United States Attorney