IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-00143-01,04-CR-W-ODS |
| | ) | |
| ABRORKHODJA ASKARKHODJAEV, | ) | |
| and KRISTIN DOUGHERTY, | ) | |
| | ) | |
| Defendants. | ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on Defendant Dougherty's Motion to Dismiss for Failure to State an Offense as to Count Ninety-Eight (doc #263) and Abrorkhodja Askarkhodjaev's Motion to Dismiss Count Ninety-Eight for Failure to State an Offense (doc #265). For the reasons set forth below, it is recommended that these motions be granted.

I. INTRODUCTION

A. The Indictment

On May 6, 2009, the Grand Jury returned a forty-five count indictment against defendants Abrorkhodja Askarkhodjaev, Nodir Yunusov, Rustamjon Shukurov, Kristin Dougherty, Ilkham Fazilov, Viorel Simon, Nodirbek Abdoollayev, Andrew Cole, Sandjar Agzamov, Jakhongir Kakhkharov, Abdukakhar Azizkhodjaev, Alexandru Frumusache, Giant Labor Solutions, LLC, Crystal Management, Inc., and Five Star Cleaning, LLC. A 143-count superseding indictment was filed on January 7, 2010.[1] Defendants Askarkhodjaev and Dougherty are the only defendants

---

[1]Defendants Yunusov, Shukurov and Agzamov have outstanding arrest warrants. Defendants Giant Labor Solutions, LLC, Crystal Management, Inc. and Five Star Cleaning, LLC

currently set for trial.

The motion before the Court concerns Count Ninety-Eight of the superseding indictment. Count Ninety-Eight provides:

**COUNT NINETY-EIGHT**
**(Promotion Money Laundering)**

The Grand Jury hereby incorporates by reference, and alleges herein, the factual allegations in paragraphs one through eighty-nine of this indictment.

On or about the dates listed below, in the Western District of Missouri and elsewhere, the defendants named in each count below, aiding and abetting each other and others, knowingly conducted a financial transaction affecting interstate commerce, as described below, which involved the proceeds of a specified unlawful activity, that is, mail fraud, contrary to the provisions of 18 U.S.C. § 1341, as part of the aforementioned scheme to fraudulently obtain labor leasing contracts, as described in paragraphs one through fifty-nine in this indictment, with the intent to promote the carrying on of said specified unlawful activity, to wit: through the payment of salaries to the below listed defendants, allowing the Enterprise to engage in continued unlawful activity, and that while conducting such financial transaction, defendants knew that the funds involved in the financial transaction represented the proceeds of some form of unlawful activity:

| Count | Date | Defendants | Financial Transaction |
| --- | --- | --- | --- |
| Ninety-Eight | August 22, 2005 | Askarkhodjaev Dougherty Agzamov | Askarkhodjaev and Dougherty caused Agzamov to issue payroll check #2168 from the Bank of America account of KC Janitorial Services, LLC to Dougherty in the amount of $5,137.25 |

All in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and 2.

B.      The Statute

The statute under which defendants are charged in Count Ninety-Eight, 18 U.S.C. § 1956(a)(1)(A)(i) provides:

---

were dismissed. Defendants Fazilov, Simon, Abdoollayev, Cole, Kakhkharov, Azizkhodjaev and Frumusache have entered guilty pleas.

**§ 1956. Laundering of monetary instruments**

>   (a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity–
>
>   (A)(i) with the intent to promote the carrying on of specified unlawful activity ...
>
> shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both. ...

18 U.S.C. § 1956(a)(1)(A)(i).

C.  Standards for Evaluating a Motion to Dismiss

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation ...." This Constitutional requirement is implemented by Rule 7(c)(1) of the Federal Rules of Criminal Procedure which specifies that "[t]he indictment ... must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."

An indictment is sufficient if it: (1) contains the essential elements of the offenses charged; (2) fairly informs the defendant of the charges against which he must defend; and (3) enables the defendant to plead an acquittal or conviction in bar of future prosecution for the same offenses. See Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. O'Hagan, 139 F.3d 641, 651 (8th Cir. 1998); United States v. Wessels, 12 F.3d 746, 750 (8th Cir. 1993), cert. denied, 513 U.S. 831 (1994).

II.  DISCUSSION

The issue before this Court is whether Count Ninety-Eight should be dismissed as it does not

involve "proceeds" of specified unlawful activity under the money laundering statute.

In United States v. Santos, 128 S.Ct. 2020 (2008), the Court examined whether the term "proceeds" as used in 18 U.S.C. § 1956(a)(1)(A)(i) should be defined to mean "receipts" or "profits." The Court determined the rule of lenity dictated that the term "proceeds" be defined as "profits." Id. at 2025. Otherwise, the Court found the following "merger problem" exists:

> ... If "proceeds" meant "receipts," nearly every violation of the illegal-lottery statute would also be a violation of the money-laundering statute, because paying a winning bettor is a transaction involving receipts that the defendant intends to promote the carrying on of the lottery. Since few lotteries, if any, will not pay their winners, the statute criminalizing illegal lotteries, 18 U.S.C. § 1955, would "merge" with the money-laundering statute. Congress evidently decided that lottery operators ordinarily deserve up to 5 years of imprisonment, § 1955(a), but as a result of merger they would face an additional 20 years, § 1956(a)(1). Prosecutors, of course, would acquire the discretion to charge the lesser lottery offense, the greater money-laundering offense, or both–which would predictably be used to induce a plea bargain to the lesser charge.
>
> The merger problem is not limited to lottery operators. For a host of predicate crimes, merger would depend on the manner and timing of payment for the expenses associated with the commission of the crime. Few crimes are entirely free of cost, and costs are not always paid in advance. Anyone who pays for the costs of a crime with its proceeds–for example, the felon who uses the stolen money to pay for the rented getaway car–would violate the money-laundering statute. And any wealth-acquiring crime with multiple participants would become money-laundering when the initial recipient of the wealth gives his confederates their shares. Generally speaking, any specified unlawful activity, an episode of which includes transactions which are not elements of the offense and in which a participant passes receipts on to someone else, would merge with money laundering. ...
>
> The Government suggests no explanation for why Congress would have wanted a transaction that is a normal part of a crime it had duly considered and appropriately punished elsewhere in the Criminal Code to radically increase the sentence for that crime. Interpreting "proceeds" to mean "profits" eliminates the merger problem. Transactions that normally occur during the course of running a lottery are not identifiable uses of profits and thus do not violate the money-laundering statute. More generally, <u>a criminal who enters into a transaction paying the expenses of his illegal activity cannot possibly violate the money-laundering statute, because by definition profits consist of what remains after expenses are paid</u>. Defraying an activity's costs with its receipts simply will not be covered.

4

Id. at 2026-27 (emphasis supplied).

At the time the Santos case was decided, the term "proceeds" was not defined in the statute. Subsequent to the Supreme Court's decision in Santos, Congress amended the statute. Effective May 20, 2009, the term "proceeds" is now defined as "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." 18 U.S.C. § 1956(c)(9). Courts have held that this amendment does not apply retroactively. See United States v. Moreland, 604 F.3d 1058, 1074 n.4 (9th Cir. 2010). See also United States v. Bueno, 585 F.3d 847, 853 n.4 (5th Cir. 2009)("The bill is silent on retroactivity; therefore, it only applies to conduct which occurs post-amendment.")

Defendants Askarkhodjaev and Dougherty argue that Count Ninety-Eight should be dismissed as it fails to state an offense upon which relief can be granted because the "proceeds" charged in Count Ninety-Eight consist of the payment of defendant Dougherty's salary and as stated in Santos, salaries are normal business expenses which are not "profits" of the alleged criminal enterprise. (Defendant Dougherty's Motion to Dismiss for Failure to State an Offense as to Count Ninety-Eight (doc #263) at 1; Abrorkhodja Askarkhodjaev's Motion to Dismiss Count Ninety-Eight for Failure to State an Offense (doc #265) at 1) The conduct charged in Count Ninety-Eight took place on August 22, 2005, prior to the amendment of the statute.

The Government asks this Court to limit the holding of Santos because only the plurality opinion favors an across-the-board definition of "proceeds" to mean "profits."[2] (Government's

---

[2]The Government also argues that the Eighth Circuit has limited the precedential value of Santos to an illegal gambling charge and since this is not an illegal gambling case, Santos has no application here. (Government's Response in Opposition to Defendants' Motions for Dismissal of Money Laundering Count (doc #272) at 1) In support of this argument, the Government cites United States v. Williams, 605 F.3d 556 (8th Cir. 2010), and United States v. Spencer, 592 F.3d

5

Response in Opposition to Defendants' Motions for Dismissal of Money Laundering Count (doc #272) at 2-3) The plurality and dissenting opinions left the Court evenly divided between the view that "proceeds" means profits in all cases and the view that it means gross receipts in all cases. Justice Stevens provided the swing vote finding:

> The revenue generated by a gambling business that is used to pay the essential expenses of operating that business is not "proceeds" within the meaning of the money laundering statute. As the plurality notes, there is 'no explanation for why Congress would have wanted a transaction that is a normal part of a crime it had duly considered and appropriately punished elsewhere in the Criminal Code, to radically increase the sentence for that crime.' Ante, at 2027.

Santos, 128 S.Ct. at 2033 (Stevens, J., concurring). Based on the plurality opinion that "proceeds" always means "profits" and Justice Stevens' concurrence, the Court cannot agree with the Government that "profits" should not be used to define "proceeds" in this case. The revenue generated by the alleged labor trafficking scheme that is used to pay the essential expenses of operating that business, that is the salaries of the scheme's employees, is not "proceeds" within the meaning of the money laundering statute as it existed when Santos was decided.

The Court finds that the payment of a salary to defendant Dougherty which is at issue in Count Ninety-Eight constitutes an expense of the specified unlawful activity, just as it did in the Santos case. In Santos, the Court noted that the money-laundering charges against Santos were

---

866 (8th Cir. 2010). (Id. at 2-3) Contrary to the Government's argument, the Court finds that the Williams and Spencer cases did not limit the precedential value of Santos to an illegal gambling charge. Rather, these cases held that Santos does not apply in the drug context. See Williams, 605 F.3d at 568 ("[In Spencer, w]e held that Santos does not apply in the drug context.") The Williams court found a key distinction between the charge before it and the charge before the Santos court in the fact that Santos involved an operation that did not involve contraband. See Williams, 605 F.3d at 567. Since the case before this Court is not a drug case and it also does not involve contraband, the holdings of Williams and Spencer do not limit the precedential value of Santos in this instance.

based on his payments to the lottery winners and his employees; and the money-laundering charge against Santos' co-defendant Diaz, an employee of Santos, was based on his receipt of payments as an employee. See United States v. Santos, 128 S.Ct. 2020, 2031 (2008). As the Court held in Santos, the payment of these expenses cannot possibly violate the money-laundering statute because by definition profits consist of what remains after expenses are paid. Therefore, Count Ninety-Eight must be dismissed.

### III.  CONCLUSION

Based on the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order granting Defendant Dougherty's Motion to Dismiss for Failure to State an Offense as to Count Ninety-Eight (doc #263) and Abrorkhodja Askarkhodjaev's Motion to Dismiss Count Ninety-Eight for Failure to State an Offense (doc #265).

Counsel are reminded they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

*/s/ Sarah W. Hays*
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE